## SCHILLINGER *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 4.   Argued October 9, 10, 1894. — Decided November 19, 1894.

The United States cannot be sued in their courts without their consent.

In granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the liability of the government is submitted to the courts for judicial determination, and courts may not go beyond the letter of such consent.

The Court of Claims has no jurisdiction of a claim against the government for a mere tort.

The owner of letters patent for an invention, who sets up in the Court of Claims that a contractor with the United States has made use of the patented invention in the execution of his contract without compensation to the claimant, and against his protest, whereby there was a wrongful appropriation of the patent by the United States for their sole use and benefit, and that a right has accrued to him to recover of the United States the damages thus done to him, to be measured by the saving or profit made by the United States, thereby sets up a claim sounding in tort, of which the Court of Claims has no jurisdiction.

When a contractor with the United States, in the execution of his contract, uses any patented tool, machine, or process, and the government accepts the work done under such contract, *quære*, whether it can be said to have appropriated and be in possession of any property of the patentee in such a sense that the patentee may waive tort and sue as on an implied promise.

On July 19, 1870, a patent was issued to John J. Schillinger for an improvement in concrete pavement. The claim of the patent was in these words:

" The arrangement of tar paper or its equivalent between adjoining blocks of concrete, substantially as and for the purpose described."

A reissue was granted May 2, 1871. The claims in the reissue were thus stated:

" 1. A concrete pavement laid in detached blocks or sections, substantially in the manner shown and described.

" 2. The arrangement of tar paper or its equivalent between adjoining blocks of concrete, substantially as and for the purpose set forth."

On February 27, 1875, Schillinger filed in the Patent Office a disclaimer; which, after stating the language of the specification disclaimed, added: "Your petitioner hereby disclaims the forming of blocks from plastic material without interposing anything between their joints while in the process of formation."

Thereafter the Architect of the Capitol invited proposals for a concrete pavement in the Capitol grounds, and on September 2, 1875, entered into a contract with G. W. Cook for the laying of such pavement. It does not appear that in the proposals, specifications, or contract there was in terms any reference to or description of the Schillinger patent.

Frederick Law Olmsted was the person who prepared the plans and specifications, and in the contract it was provided as follows:

"The pavement to be laid with free joints, in the best manner, the courses running diagonally, and arranged around the curved parts to the satisfaction of the said Fred. Law Olmsted.

"It is understood and agreed by the party of the second part that in the event of any legal proceedings being taken by other parties against the contractor of the United States for the infringement of any patent or claimed patent during the execution of the work the contractor shall hold the United States harmless; and if said proceedings tend to create delay in the prosecution of the work the United States shall have the right to immediately employ other parties to complete the same, and the contractor shall reimburse the United States in any extra amount it may have to pay for such completion over and above the amount which the contractor would have been entitled to for the same work."

This is the only language found in the contract which in any manner suggests the use, or possibility of use, of the Schillinger patent. The contract price was 28½ cents per square foot. Certain of the claimants who had acquired by assignment the right to use the Schillinger patent in the District of Columbia were bidders for such contract, and proposed to do the work in accordance with the Schillinger patent at 45 cents per square foot. Cook proceeded to perform the contract; finished it,

and received payment between October, 1875, and July, 1881.

On March 22, 1887, these claimants filed their petition in the Court of Claims, asserting full ownership of the Schillinger patent, and seeking to recover from the United States, damages for the wrongful use thereof in the construction of this pavement. [1]   The Court of Claims held, (24 C. Cl. 278,)

---

[1] The material allegations in the petition respecting the claims for damage were these : (Reporter.)

" Your petitioners aver that during the year 1875 the aforesaid Architect Clark advertised for proposals to do this artificial stone work in the Capitol grounds, and your petitioners, in pursuance of said advertisement, put in a bid to do the work under the Schillinger patent aforesaid. The contract was awarded by said Architect Clark to one George W. Cook, who was a lower bidder, and the architect of the Capitol entered into a contract with the said George W. Cook to do the work aforesaid, which contract is made part hereof and marked Exhibit " C," and the said contract embraced the use of the said Schillinger patent, to the great damage and injury of your petitioners' business.

" Your petitioners aver that they protested against the use of their patent without compensation, and, notwithstanding said protest and notice, the said Architect Clark caused the said artificial stone sidewalk to be laid under the said Schillinger patent, and it has all been laid under said Schillinger patent without any compensation to your petitioners and contrary to the laws of the United States.

" Your petitioners also aver that the said Schillinger patent had at the time of the making of the said contract with the said Cook by the architect of the Capitol gone into general and public use, and was acquiesced in by the public as valuable and useful ; that this wrongful appropriation of the patent by the United States government for its sole use and benefit encouraged others to infringe, and your petitioners were greatly damaged thereby.

" Your petitioners claim the right to recover the damages done to them by this wrong, and the saving or profit made by the United States as the basis of this suit is upon their patent rights, which are founded upon the patent laws of the United States.

" Your petitioners further aver that the said architect of the Capitol has laid or has directed and caused to be laid for the sole use and benefit of the United States about 249,361 feet of this sidewalk in the Capitol grounds, in all of which the Schillinger patent has been used and is embodied in it.

" The actual profit of which your petitioners have been deprived in this work is ($69,820.68) sixty-nine thousand eight hundred and twenty dollars and sixty-eight cents, and the actual saving to the Government by the use of said Schillinger patent in this work is about two hundred and fifty thousand dollars, for which last amount your petitioners claim judgment."

that there was no contract, either expressed or implied, on the part of the government for the use of such patent, and on that ground dismissed the petition as outside of the jurisdiction of the court.

From that judgment the claimants appealed to this court.

*Mr. John C. Fay* and *Mr. William G. Johnson* for appellants.

*Mr. Eppa Hunton* and *Mr. V. B. Edwards* filed briefs for appellants.

*Mr. Robert Howard* filed a brief for appellants.

*Mr. Assistant Attorney General Conrad* for appellees.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The United States cannot be sued in their courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the liability of the Government is submitted to the courts for judicial determination. Beyond the letter of such consent, the courts may not go, no matter how beneficial they may deem or in fact might be their possession of a larger jurisdiction over the liabilities of the Government.

Until the organization of the Court of Claims by the act of February 24, 1855, c. 122, 10 Stat. 612, the only recourse of claimants was in an appeal to Congress. That act defines the claims which could be submitted to the Court of Claims for adjudication as follows:

" The said court shall hear and determine all claims founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States, which may be suggested to it by a petition filed therein; and also all claims which may be referred to said court by either house of Congress."

By the act of March 3, 1863, c. 92, 12 Stat. 765, this additional jurisdiction was given:

"That the said court . . . shall also have jurisdiction of all set-offs, counter-claims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever, on the part of the government against any person making claim against the government in said court."

On March 3, 1887, 24 Stat. 505, c. 359, a new act was passed in reference to the jurisdiction of the court, its language being as follows:

"The Court of Claims shall have jurisdiction to hear and determine the following matters:

"First. All claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an Executive Department, or upon any contract, expressed or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable. . . . .

"Second. All set-offs, counter-claims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court."

Under neither of these statutes had or has the Court of Claims any jurisdiction of claims against the government for mere torts; some element of contractual liability must lie at the foundation of every action. In *Gibbons* v. *United States*, 8 Wall. 269, 275, it was said: "The language of the statutes which confer jurisdiction upon the Court of Claims, excludes by the strongest implication demands against the government founded on torts. The general principle which we have already stated as applicable to all governments, forbids, on a policy imposed by necessity, that they should hold themselves liable for unauthorized wrongs inflicted by their officers on the citizen, though occurring while engaged in the discharge of official duties." And, again, in *Morgan* v. *United States*, 14

Wall. 531, 534: " Congress has wisely reserved to itself the right to give or withhold relief where the claim is founded on the wrongful proceedings of an officer of the government."

The rule thus laid down has been consistently followed by this court in many cases up to and including the recent case of *Hill* v. *United States*, 149 U. S. 593, 598.

If there was any error in this interpretation, first announced in 1868, of the scope of the act, and if it was the intent of Congress to grant to the court jurisdiction over actions against the government for torts, an amending statute of but a few words would have corrected the error and removed all doubt. While the language of the act of 1887 is broader than that of 1855, it is equally clear in withholding such jurisdiction. It added, " all claims founded upon the Constitution of the United States," but that does not include claims founded upon torts, any more than " all claims founded upon any law of Congress " found in the prior act. The identity of the descriptive words excludes the thought of any change.

It is said that the Constitution forbids the taking of private property for public uses without just compensation ; that therefore every appropriation of private property by any official to the uses of the government, no matter however wrongfully made, creates a claim founded upon the Constitution of the United States and within the letter of the grant in the act of 1887 of the jurisdiction to the Court of Claims. If that argument be good, it is equally good applied to every other provision of the Constitution as well as to every law of Congress. This prohibition of the taking of private property for public use without compensation is no more sacred than that other constitutional provision that no person shall be deprived of life, liberty, or property without due process of law. Can it be that Congress intended that every wrongful arrest and detention of an individual, or seizure of his property by an officer of the government, should expose it to an action for damages in the Court of Claims ? If any such breadth of jurisdiction was contemplated, language which had already been given a restrictive meaning would have been carefully avoided.

It is true also that to jurisdiction over claims founded " upon

any contract, expressed or implied, with the government of the United States," is added jurisdiction over claims "for damages, liquidated or unliquidated," but this grant is limited by the provision "in cases not sounding in tort." This limitation, even if qualifying only the clause immediately preceding, and not extending to the entire grant of jurisdiction found in the section, is a clear endorsement of the frequent ruling of this court that cases sounding in tort are not cognizable in the Court of Claims.

That this action is one sounding in tort is clear. It is in form one to recover damages. The petition charges a wrongful appropriation by the government, against the protest of the claimants, and prays to recover the damages done by such wrong. The successive allegations place the parties in continued antagonism to each other, and there is no statement tending to show a coming together of minds in respect to anything. It is plainly and solely an action for an infringement, and in this connection reference may be made to the statutory provision (Rev. Stat. § 4919) of an action on the case, as the legal remedy for the recovery of damages for the infringement of a patent. If it be said that a party may sometimes waive a tort and sue in assumpsit, as on an implied promise, it is technically a sufficient reply to say that these claimants have not done so. They have not counted on any promise, either express or implied.

But we do not care to rest our decision upon the mere form of action. The transaction as stated in the petition, and as disclosed by the findings of the court, was a tort pure and simple. The case was, within the language of the statute, one "sounding in tort." It is in this respect essentially different from *United States* v. *Palmer*, 128 U. S. 262, 269. That was an action to recover for the authorized use of a patent by the government, and these observations in the opinion are pertinent:

"This is not a claim for an infringement, but a claim of compensation for an authorized use — two things totally distinct in the law, as distinct as trespass on lands is from use and occupation under a lease. The first sentence in the

original opinion of the court below strikes the key-note of the argument on this point. It is as follows: 'The claimant in this case invited the government to adopt his patented infantry equipments, and the government did so. It is conceded on both sides that there was no infringement of the claimant's patent, and that whatever the government did was done with the consent of the patentee and under his implied license.' We think that an implied contract for compensation fairly arose under the license to use, and the actual use, little or much, that ensued thereon."

Here the claimants never authorized the use of the patent right by the government; never consented to, but always protested against it, threatening to interfere by injunction or other proceedings to restrain such use. There was no act of Congress in terms directing, or even by implication suggesting, the use of the patent. No officer of the government directed its use, and the contract which was executed by Cook did not name or describe it. There was no recognition by the government or any of its officers of the fact that in the construction of the pavement there was any use of the patent, or that any appropriation was being made of claimant's property. The government proceeded as though it were acting only in the management of its own property and the exercise of its own rights, and without any trespass upon the rights of the claimants. There was no point in the whole transaction from its commencement to its close where the minds of the parties met or where there was anything in the semblance of an agreement. So not only does the petition count upon a tort, but also the findings show a tort. That is the essential fact underlying the transaction and upon which rests every pretence of a right to recover. There was no suggestion of a waiver of the tort or a pretence of any implied contract until after the decision of the Court of Claims that it had no jurisdiction over an action to recover for the tort.

It may be well to notice some of the cases in which the jurisdiction of the Court of Claims over implied contracts has been sustained. In the case of *United States* v. *Russell*, 13 Wall. 623, 626, which was an action to recover for the use of

certain steamers, the property of the claimant, it was found as a fact —

"That in the case of each of these steamers, at the times when the same were respectively taken into the service of the United States, the officers acting for the United States, *did not intend to ' appropriate' these steamers to the United States, nor even their services; but they did intend to compel the captains and crews with such steamers to perform the services needed, and to pay a reasonable compensation for such services, and such was the understanding of the claimant;* and that each of said steamers, so soon as the services for which they were respectively required had been performed, were *returned* to the exclusive possession and control of the claimant."

Thus it appears that the minds of the claimants and the officers acting for the government met; both intended a contract; and the power of the officers to act for the government in the premises not being disputed, it was obviously just to treat the case as one of contract and not of tort. So also in the case of *United States* v. *Great Falls Manufacturing Company*, 112 U. S. 645. The appropriation of the claimants' property was under direct legislative enactment by Congress. The property thus appropriated was confessedly the property of the claimants, to which the government made no pretence of title. The claimants assented to such appropriation; entered into arbitration proceedings to determine the amount due them therefor. Hence all the elements of contract were found in the transaction.

But there is still another aspect in which this case may be considered. The patent of Schillinger runs to the mode of constructing concrete pavements. The mere form of a pavement with free joints, that is, in separate blocks, is not since the filing of his disclaimer within the scope of his patent. It may be that the process or mode by which Cook, the contractor, constructed the pavement in the Capitol grounds was that described in and covered by the Schillinger patent. He may, therefore, have been an infringer by using that process or mode in the construction of the pavement, and liable to the

claimants for the damages they have sustained in consequence thereof. It may be conceded, also, that the government, as having at least consented to the use by Cook of such process or method in the construction of the pavement, is also liable for damages as a joint tort feasor. But what property of the claimants has the government appropriated? It has, and uses, the pavement as completed in the Capitol grounds, but there is no pretence of a patent on the pavement as a completed structure. When a contractor, in the execution of his contract, uses any patented tool, machine, or process, and the government accepts the work done under such contract, can it be said to have appropriated and be in possession of any property of the patentee in such a sense that the patentee may waive the tort and sue as on an implied promise? The contractor may have profited by the use of the tool, machine, or process, but the work, as completed and enjoyed by the government, is the same as though done by a different and unpatented process, tool, or machine. Take, for illustration, a patented hammer or trowel. If a contractor in driving nails or laying bricks use such patented tools, does any patent right pass into the building and become a part of it, so that he who takes the building can be said to be in the possession and enjoyment of such patent right? Even if it be conceded that Cook, in the doing of this work, used tar paper, or its equivalent, to separate the blocks of concrete, and thus finally completed a concrete pavement in detached blocks or sections, was such completed pavement any different from what it would have been if the separation between the blocks had been accomplished in some other way; and is the government now in possession or enjoyment of anything embraced within the patent? Do the facts, as stated in the petition or as found by the court, show anything more than a wrong done, and can this be adjudged other than a case "sounding in tort"?

We think not, and therefore the judgment of the Court of Claims is

*Affirmed.*

MR. JUSTICE HARLAN, with whom concurred MR. JUSTICE SHIRAS, dissenting.

I am constrained to withhold my assent to the opinion and judgment in this case.

The United States granted to Schillinger in 1870 a patent for an alleged new and useful improvement in concrete pavements. That patent was surrendered, and a new one issued in 1871 based on amended specifications. The present suit against the United States proceeds upon the ground that in a pavement constructed in the Capitol grounds, under the supervision of the Architect of the Capitol, the United States knowingly obtained and still enjoys the benefit of the improvement covered by the Schillinger patent.

Can a suit be maintained against the United States in the Court of Claims, as upon contract, for the reasonable value of such use of the patentee's improvement?

In *James* v. *Campbell,* 104 U. S. 356, 357, this court said: "That the government of the United States, when it grants letters patent for a new invention or discovery in the arts, confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use, without compensation, land which has been patented to a private purchaser, we have no doubt. The Constitution gives to Congress power 'to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries,' which could not be affected if the government had a reserved right to publish such writings or to use such inventions without the consent of the owner. Many inventions relate to subjects which can only be properly used by the government, such as explosive shells, rams, and submarine batteries to be attached to armed vessels. If it could use such inventions without compensation, the inventors could get no return at all for their discoveries and experiments."

*United States* v. *Great Falls Manufacturing Co.,* 112 U. S. 645, 656, was a suit in the Court of Claims to obtain compensation for all past and future use and occupation by the United States of certain lands, water rights and privileges claimed by

the plaintiff and taken for public use by the agents of the government. This court said: " The making of the improvements necessarily involves the taking of the property; and if, for the want of formal proceedings for its condemnation to public use, the claimant was entitled, at the beginning of the work, to have the agents of the government enjoined from prosecuting it until provision was made for securing in some way payment of the compensation required by the Constitution — upon which question we express no opinion — there is no sound reason why the claimant might not waive that right and, electing to regard the action of the government as a taking under its sovereign right of eminent domain, demand just compensation. *Kohl* v. *United States*, 91 U. S. 367, 374. In that view, we are of opinion that the United States having, by its agents, proceeding under the authority of Congress, taken the property of the claimant for public use, are under an obligation imposed by the Constitution to make compensation. The law will imply a promise to make the required compensation where property, to which the government asserts no title, is taken pursuant to an act of Congress as private property to be applied for public uses. Such an implication being consistent with the constitutional duty of the government, as well as with common justice, the claimant's cause of action is one that arises out of implied contract within the meaning of the statute which confers jurisdiction upon the Court of Claims of actions 'founded upon any contract, express or implied, with the government of the United States.'"

In *Great Falls Manufacturing Co.* v. *Attorney General*, 124 U. S. 581, 597, 598, it appeared that the Secretary of War was authorized by an act of Congress to take possession of premises that might be covered by a survey and map directed to be made. He took possession of property and water rights that were alleged not to be embraced in such survey and map; and it was contended that in so doing he was guilty of trespass. This court said: "If the Secretary of War, who was invested with large discretion in determining what land was actually required to accomplish in the best manner the object Congress had in view, found it necessary to take, and has

taken and used, and still holds, lands of the plaintiff for the proposed dam, which happen not to be covered by the survey and map, the United States are as much bound to make just compensation therefor as if such lands had been actually embraced in that survey and map." After observing that it must not be understood as holding that the Secretary could bind the United States to pay for lands taken by him which manifestly had no substantial connection with the improvement under his charge, the court said: "It is sufficient to say that the record discloses nothing showing that he has taken more land than was reasonably necessary for the purposes described in the act of Congress, or that he did not honestly and reasonably exercise the discretion with which he was invested; and, consequently, the government is under a constitutional obligation to make compensation for any property or property-right taken, used, and held by him for the purposes indicated in the act of Congress, whether it is embraced or described in said survey or map, or not. *United States* v. *Great Falls Manufacturing Co.*, 112 U. S. 645, 646. . . . Even if the Secretary's survey and map and the publication of the Attorney General's notice did not, in strict law, justify the former in taking possession of the land and water rights in question, it was competent for the company to waive the tort and proceed against the United States, as upon an implied contract, it appearing, as it does here, that the government recognizes and retains the possession taken in its behalf for the public purposes indicated in the act under which its officers have proceeded."

In *Hollister* v. *Benedict Manufacturing Co.*, 113 U. S. 59, 67, the principles laid down in *James* v. *Campbell*, and in *United States* v. *Great Falls Manufacturing Co.*, above cited, were recognized and approved. And in *United States* v. *Palmer*, 128 U. S. 262, 269, the decision was that the United States was liable to suit in the Court of Claims, as upon implied contract, for the value of the use of an invention which was used with the consent of the patentee.

It may, therefore, be regarded as settled that the government may be sued in the Court of Claims, as upon implied

contract, not only for the value of specific property taken for public use by an officer acting under the authority of the government, even if the taking was originally without the consent of the owner and without legal proceedings for condemnation, but for the value of the use of a patented invention when such use was with the consent of the patentee.

It seems to me — looking at the case from the standpoint of mere contract — that these principles control the present inquiry, and sustain the right of the claimant to sue the government for the value of the use of his alleged invention. Congress made an appropriation of two hundred thousand dollars "for improvement of Capitol grounds according to the plans and under the general direction of Frederick Law Olmsted, to be expended by the Architect of the Capitol." Act of June 23, 1874, c. 455, 18 Stat. 204, 214. The Architect invited proposals for laying concrete pavement required for the proposed improvement according to those plans and specifications and one Cook was the lowest bidder. His bid was accepted. Schillinger protested against the contract being awarded to Cook, the latter having no right to use the Schillinger patent. He gave notice to the Architect of his patented rights. It was found by the Court of Claims that "at the time the bids were opened plaintiff protested to the Architect against the award being made to any one but his associate Roberts [who was entitled to use the Schillinger invention]; but the Architect and his advising engineers decided they would award the contract to the lowest bidder, on the ground that as the validity of the Schillinger patent had not been tested at law or in equity they could not decide whether it was valid or not, and that the interest of the government, in their judgment, would be best subserved by giving the contract to the lowest bidder, taking a bond to protect the government from the suit threatened by claimant." In the contract between the government, represented by the Architect of the Capitol, and Cook, for a concrete pavement, according to the Olmsted plans and specifications, it was provided " that in the event of any legal proceedings being taken by other parties against the contractor of the United States for

the infringement of any patent or claimed patent during execution of the work the contractor shall hold the United States harmless."

All this shows that the Architect of the Capitol was aware of the existence of the Schillinger patent. He did not dispute Schillinger's rights under the patent, nor did he, as the representative of the government, claim that the patent was invalid, nor if valid that the government could get the benefit of it in the contemplated improvement without compensating the patentee. On the contrary he, in effect, recognized a right to such compensation, if the patent was valid, and took a bond from the contractor for the protection of the government in the event of a suit against the contractor that would interfere with the use of the Schillinger invention in the pavement in the public grounds. But no such suit appears to have been brought. The patentee had the right to waive any suit against the contractor or the Architect that would interfere with the prosecution of the work, and look to the obligation of the government to make him just compensation for the use of his invention. It was so ruled in the *Great Falls case.* The authority of that case is not here disputed. As the government had granted the patent, the purpose to commit a tort cannot be imputed to the Architect as the agent of the United States. His action meant no more than that he would leave the question of the obligation of the United States to make compensation for the use of the Schillinger patent to depend upon a decision by the courts as to its validity.

Under the authority given by Congress to expend the money appropriated in improving the Capitol grounds according to specified plans, the Architect of the Capitol had a large discretion, and was authorized, so far as the government was concerned, to use in such improvement any patented invention that those plans would require, or that would best subserve the public interests, subject of course to the constitutional obligation to make just compensation to the inventor. The Constitution imposing that obligation is a covenant between the government and every citizen whose property is appropriated by it for public use. If Schillinger's patent was valid,

then the government is bound by an obligation of the highest character to compensate him for the use of his invention, and its use by the government cannot be said to arise out of mere tort, at least when its representative did not himself dispute, nor assume to decide, the validity of the patent. If the act of Congress under . which the Architect proceeded had, in express. terms, directed him to use Schillinger's invention in any pavement laid down in the public grounds, then such use, according to the decision in *United States* v. *Great Falls Manufacturing Co.*, would have made a case of implied contract based on the constitutional obligation to make just compensation for private property taken for public use. But such a case is not distinguishable, in principle, from the present one, where the Architect, proceeding under a general authority to expend the public money according to specified plans, uses or knowingly permits to be used a particular patented invention, not disputing the rights of the patentee, but leaving the question of the validity of the patent, and the consequent liability of the government for its use, to judicial determination.

I do not stop to discuss the question whether Schillinger's patent was valid nor whether it was infringed by the mode in which the pavement in question was constructed. Those questions would have been here for determination if the court below had assumed jurisdiction and decided the case upon its merits. That court dismissed the petition for want of jurisdiction on the ground simply that there was no contract, express or implied, between the owner of the patent and the government. It held that the appropriation or use of the Schillinger invention was in the nature of a tort, and this conclusion rested upon the ground that the Architect of the Capitol denied that any private right existed under the alleged patent. But this was an error. There is no finding by the court showing a denial of that character, even if it be assumed that such a denial could be deemed of any consequence in view of the constitutional obligation to make just compensation for private property taken for public use.

I am of opinion that when the government, by its agent, knowingly uses or permits to be used for its benefit a valid

patented invention, it is liable to suit in the Court of Claims for the value of such use, and that its liability arises out of contract based upon the constitutional requirement that private property shall not be taken for public use without just compensation.

It is proper to say that the claimant in his petition does not place the claim for compensation as distinctly upon the basis of contract as he might have done. But as the opinion of the court may be interpreted as proceeding upon the broad ground that the government could not be sued, as upon contract express or implied, unless its agent at the time the invention was used for its benefit recognized or admitted the validity of the patent, I have thought it appropriate to state my view of that question.

2. There is another view of the case which is independent of mere contract. The act of March 3, 1887, for the first time, gives the Court of Claims jurisdiction to hear and determine " all claims founded upon the Constitution of the United States." If the Schillinger patent be valid, and if the invention described in it has been used or appropriated by the government through its agent charged with the improvement of the Capitol grounds, then the patentee or those entitled to enjoy the exclusive rights granted by it, are entitled to be compensated by the government. And the claim to have just compensation for such an appropriation of private property to the public use is " founded upon the Constitution of the United States." It is none the less a claim of that character, even if the appropriation had its origin in tort. The constitutional obligation cannot be evaded by showing that the original appropriation was without the express direction of the government, nor by simply interposing a denial of the title of the claimant to the property or property rights alleged to have been appropriated. The questions of title and appropriation are for judicial determination. Those being decided in favor of the claimant, the Constitution requires a judgment in his favor. If the claim here made to be compensated for the use of a patented invention, is not founded upon the Constitution of the United States, it would be difficult to imagine one that would be of that character.

As the agent of the government was moved to use the Schillinger invention because the patent had not then been established by the decision of any court, it may be stated that it was subsequently sustained, as the findings below show, in numerous cases, the earliest being *California Artificial Stone Paving Co* v. *Perine,* 7 Sawyer, 190; *S. C.* 8 Fed. Rep. 821, (1881,) Sawyer, J., and the latest being *Hurlbut* v. *Schillinger,* 130 U. S. 456.

I am authorized by MR. JUSTICE SHIRAS to say that he concurs in this opinion.