Booth, Ghief Justice,
delivered the opinion of the court:
This case is governed by a special jurisdictional act approved March 3,1927, which reads as follows:
“Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the findings of fact made by the Court of Claims in the case of Arthur E. Colgate, administrator of the estate of Clinton G. Colgate, deceased, against the United States, congressional, numbered 6063, Senate Document Numbered 703, *673 Sixty-fourth Congress, second session, be, and they are hereby, referred back to the Court of Claims with jurisdiction to render judgment as the findings of fact heretofore found and the law require: Provided, That either party hereto may appeal to the Supreme Court of the United States upon or from any conclusion of law or judgment, from which appeals now lie in other cases, at any time within ninety days after the rendition of judgment: Provided further, That the amount of any such judgment shall not exceed the sum of '$50,000: And provided further, That such notice hereof shall be given to the Attorney General of the United States as may be provided by orders of said court, and it shall be the duty -of the Attorney General to cause one of his assistants to appear and defend for the United States.”
The case was before the court in 1916 upon a congressional reference, and findings of fact were made and transmitted to Congress on December 4, 1916.[1] The special jurisdictional .act expressly limits the adjudication of the case to the findings heretofore made by the court and leaves for final consideration by the court the single issue of law applicable thereto. The case itself is one of ancient origin and sui generis in many of its aspects. Simpson, the original patentee, filed his first application for a patent January 31, 1848. The application embraced but one claim and that, as appears from Finding I, was for a “ combination and arrangement of the gums and glass around telegraphic wire in such form as to secure the controlling power of the mysterious agent £ electricity.’ ” In April, 1849, the applicant filed a new application, going more into detail and ■especially amplifying his invention. The applications were rejected bjr the Patent Office, and on January 15, 1851, the applicant wrote the letter set out at the close of Finding II. Almost eight years later, on December 24, 1858, the inventor filed another application containing without important modifications a claim for his original invention. This application was rejected on the ground of public knowledge of the alleged invention and abandonment of the same. From the order rejecting this application the applicant unsuccessfully appealed to the board of committee of appeals. On *674 October 8, 1859, another application was filed, containing the same subject matter, and again it met with a rejection order, predicated upon the same ground as the preceding rejection. The applicant again appealed, resulting in a confirmation of the order of rejection. The applicant then appealed to the United States Circuit Court for the District of Columbia, receiving finally a decision adverse to his contentions. On May 4, 1866, another application was filed covering again the same subject matter, and as a close to the proceedings the application was allowed and letters patent issued to the inventor on May 21, 1867. The findings disclose the subject matter of the invention; no issue arises with respect thereto.
The jurisdictional act uses these words, “ to the Court of Claims with jurisdiction to render judgment as the findings of fact heretofore found and the law require.” Both the plaintiff and the defendant seem to be in accord with the construction of the statute, that the law applicable to the case is the statutory law in force and in existence at the time the controversy arose and continued. We think the parties are correct in this respect. Congress was fully apprised as to the facts. The existing doubt as to liability arose upon a legal point, and the plaintiff was afforded a forum and opportunity to present his contentions as to the legal liability of the defendant, and the defendant granted equal rights with respect to any available defenses.
The plaintiff insists that the validity of the patent has been repeatedly established in courts of competent jurisdiction and that this issue is res adjudicaba.
The original assignee of the patent, Colgate, commenced a suit in equity against the Western Union Telegraph Company to enjoin infringement of the patent herein involved in the United States Circuit Court for the Southern District of New York. (15 Blatch. 365.) Then Circuit Judge Blatchford on November 26, 1878, delivered the opinion of the court. In the opinion, a very exhaustive one, the court covered and disposed of every defense now raised by the defendant, lack of novelty, anticipation, abandonment, and alleged illegality of procedure in the Patent Office. An injunction was granted and an accounting decreed. Subse *675 quently the defendant paid the plaintiff $100,000 in satisfaction of past infringement and for a license for future use.
The above case, subsequently followed by additional litigation involving Simpson’s patent, would, of course, in the usual course of judicial procedure, determine the issue as to validity. See also Colgate v. Western Union Telegraph Co., 19 Fed. 828; Colgate v. Gold & Stock Telegraph Co. (Federal cases #2991); United States v. Colgate, 21 Fed. 318; United States v. Colgate, 32 Fed. 624; Colgate v. International Ocean Telegraph Co. (Federal cases #2993); Colgate v. Compagnie Francaise du Telegraphe de Paris a New York, 23 Fed. 82.
The jurisdictional act is positive in expression and devolves upon the court the necessity of adjudicating the case upon the findings made in 1916. The findings reported to the Senate in 1916 followed from a quite voluminous record, including, of course, the documents recited therein, and were not excepted to by either party subsequent to their announcement, so that they did reflect to the satisfaction of the parties the facts of the case from the record made up during the course of the trial of the same. The court, in view of this situation, has no alternative except to take the case and adjudicate it upon the existing findings and the applicable law. The court would have little trouble in doing so were it not for the defendant’s insistence upon the issue of abandonment. This, we think, is the determinative point in the case. Circuit Judge Blatchford disposed of this particular contention and predicated his conclusions upon a letter written by the inventor to the Commissioner of Patents on January 13, 1851. This letter the court reproduces, as follows:
“ Please pay to the order of George B. Simpson, claimant, for insulation of telegraph wire, twenty dollars balance of patent fee to be refunded on rejection of claim.”
In response to a defense rested upon abandonment of application, predicated upon the foregoing letter, the court said:
“ His specification of 1849 is fairly to be considered, for the purposes of this suit, as an amendment of his two specifications of 1848, and the application of January, 1848, is to be regarded as an application completed in 1849, in such wise *676 that the application made in January, 1848, is to be regarded as a continuous application, rejected in October, 1849. By the statute, as it stood at the latter date, the applicant, on the rejection of his application for want of novelty, which was the ground of such rejection of Simpson’s application, had placed before him two alternatives. One was to elect to withdraw his application, whereupon, on filing a notice, in writing, of such election, he would be entitled to receive back $20. The other was to persist in his claim for a patent, whereupon, on filing a new oath, he could take an appeal. If he did not file a notice of his election to withdraw his application, he was to be regarded as persisting in his claim for a patent. In the present case, Simpson did not file any notice of his election to withdraw his application, or any notice that he withdrew his application. He asked for the $20, without withdrawing his application, and, although the office was not authorized to pay him back the $20 unless he withdrew his application, it did so. The office may have regarded the request for the $20 as equivalent to a withdrawal of the application, but the statute is distinct, and a request to be paid ‘ twenty dollars balance of patent fee, to be refunded on rejection of claim,’ can not be construed as a withdrawal of the application, even though the $20 was refunded and accepted. The statute is plain, and the applicant may have intentionally refrained from withdrawing his application, while, if the office had informed him that the $20 would not be refunded unless he first filed a withdrawal of his application, he might have refused to file such withdrawal, lest it might prejudice his rights. He left all the papers in the Patent Office. According to his own statement, he had refunded to Day the $20 fourteen months before he received it back from the Patent Office. Therefore, when he asked the office for the $20, it must have been solely because of his need of money. There is no act or declaration of his, in connection with the refunding of the $20, that can be construed into an abandonment of his application or of his invention.”
Manifestly the court did not have before it Simpson’s letter of January 15, 1851, set forth at the end of Finding II, in which the inventor unequivocally withdraws his application. The letter was in existence and available to the defendant. As a matter of fact, the complainant’s counsel stated to the defendant’s counsel upon the hearing that he had found this identical letter in the Patent Office and brought it to his attention. The failure of the defendant to incorporate it in the record is commented upon by the court *677 in the case of Colgate v. Western Union Telegraph Co., 19 Fed. 828, as follows:
“ Whether it was assumed by defendant’s counsel that the fact was not of sufficient importance to be incorporated into the proofs, or whether they supposed it would be treated by the court as a conceded fact, is not material, in view of the decision and opinion of the court rendered within a few days after the hearing, by which it was plainly indicated that the fact was a material one and was not in the proofs.”
The patent statute of 1836 states in part as follows:
“ In every such case, if the applicant shall elect to withdraw his application, relinquishing his claim to the model, he shall be entitled to receive back $20, part of the duty required by this act, on filing a notice in writing of such election in the Patent Office, a copy of which, certified by the commissioner, shall be a sufficient warrant to the Treasurer for paying back to the said applicant the said sum of twenty dollars. But if the applicant in such case shall persist in his claim for a patent, with or without any alteration of his specifications, he shall be required to make oath or affirmation anew, in manner as aforesaid.”
The opinion of the court is obviously sound in holding that the refund of the patent fee to Simpson in pursuance of the letter of January 13, 1851, was not in accord with the statute. However, it is to be especially noted that the refund of the fee was not made by the Patent Office until, as recited in Judge Blatchford’s opinion, January 21, 1851, six days after the letter of January 15, 1851, a document which unquestionably met the requirements of the act of 1836 concerning refunds. The inference, we think, is irresistible that the commissioner refused a refund under the letter of January 13, 1851, and exacted the letter of January 15, 1851, two days later, prior to the payment of the refund on January 21,1851. The fact is indisputable that the letter of January 15, 1851, was not before Judge Blatchford, and was not incorporated in the record in the first case of Colgate v. Western Union Telegraph Co. This is fully confirmed by the proceedings for a rehearing, denied by the court in Colgate v. Western Union Telegraph Co., 19 Fed. 828 (supra).
To cite numerous authorities upon the effect of the withdrawal of an application for patent and a failure to file a new *678 one for a period of nearly eight years, wherein during the interim the invention has become known and gone into public use, is a useless proceeding. Suffice it to say that a careful examination of the cases in the briefs discloses no single instance wherein it has not been held that a proceeding akin to the instant case has not been held fatal to the patentee upon the ground of abandonment. Prior to 1861 the patent statutes fixed no specific limitation for the prosecution of applications for patents, and the issue of abandonment was uniformly determined upon general principles, taking into consideration the diligence of the applicant and the rights of the public, and Judge Blatchford’s discussion of the lack of evidence of any affirmative abandonment upon the part of Simpson, due to his distressing poverty and treatment by the Patent Office, is, without the letter of January 15, 1851, unanswerable. To hazard an opinion as to what might have been the result in the first Western Union case (Federal cases, #2995), if the letter of January 15, 1851, had been incorporated in the record, is no part of the court’s present duty. It is, we think, proper to observe that an insurmountable obstacle to the plaintiff’s right to recover herein exists in the letter of January 15, 1851, found by the court and conceded by all parties to be a part of the transaction, and not heretofore made the part of any record adjudicating the validity of Simpson’s patent, except as commented on in the motion for a rehearing in the case decided by Judge Wallace in 1884. (19 Fed. 828.)
The court being of the opinion that the jurisdictional act exacts an adjudication of plaintiff’s rights under the existing facts, i. e., is it possible for the plaintiff to recover in view of the facts found in 1916, but which were the facts in 1851 — if so, render judgment, irrespective of the statute of limitations ; if not, decide accordingly- — can do nothing else except dismiss the petition.
It has long since been the law, established by precedent in the case of Schillinger v. United States, 155 U. S. 163, and thereafter followed without exception, “that .the United States may specify the cases and contingencies in which the liability of the Government is submitted to the courts for *679 judicial determination, and courts may not go beyond the letter of such consent.” While there may be some merit in plaintiff’s contention of res adjudicada, and if the case was in a position to be heard in a court of competent jurisdiction this late day the insistence would be tenable, nevertheless it is our opinion that where Congress has before it all the facts and decisions of the courts respecting the subject matter of a claim against the Government, and determines by a special act to submit the case in its then condition to this court for a judicial determination of liability, the court is without authority to do more than take the case as it finds it and reach a determination in accord with its merits under the present record of facts, especially so when the facts of the case differ materially from the facts appearing in the record involving former adjudications.
The petition will be dismissed. It is so ordered.
Sinnott, Judge; GReen, Judge; Moss, Judge; and Graham, Judge, concur.

 52 C. CIS. 543.