## TATUM v. UNITED STATES.

### No. 10616.

Circuit Court of Appeals, Ninth Circuit.

Dec. 11, 1944.

A. L. Wirin and J. B. Tietz, both of Los Angeles, Cal., and Wayne M. Collins and Theodore Tamba, both of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and R. B. McMillan and Joseph Karesh, Asst. U. S. Attys., all of San Francisco, Cal., for appellee.

Before GARRECHT, HEALY, and BONE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment of conviction of the appellant by the District Court for the Northern District of California, Southern Division, and a jury thereof.

Appellant, one of Mankind United's associates, was convicted in the court below under an indictment for a violation of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq.

In the court below and before the Selective Service Agencies, he claimed to be a minister and that he was entitled to a classification as such under the Selective Training and Service Act.

Bagley v. United States, 9 Cir., 144 F.2d 788 disposes adversely to the appellant, of the issue of the availability to the appellant, as a defense to the instant indictment, of the denial of due process by the Selective Service Agencies. The appellant concedes this in his brief.

Remaining in the instant case, however, is the one question as to whether the prosecutor's argument to the jury was so prejudicial as to require a reversal of the judgment, and thus afford the appellant an opportunity to have a new trial.

In the course of the argument of Government counsel to the jury, the following colloquy ensued:

"Mr. Karesh [Government counsel]: * * * I call your attention to the blood of the battlefield—

"Mr. Wirin [counsel for appellant]: We object to the blood of the battlefield and charge it as a prejudicial statement of counsel. We ask that the Court instruct counsel not to refer to the blood of the battlefield in his argument.

"Mr. Karesh: I see nothing prejudicial about it, and I say to Your Honor—with all respect this is—it is the Selective Service System, and under the Selective Service Act if a man is called and refuses to respond, someone else must be called.

"The Court: Proceed.

"Mr. Wirin: May we have an exception?

"The Court: Note an exception.

* * * * * *

"Mr. Karesh: And by inference he casts on those who are now fighting in the armed forces of our country the stigma of traitor to God, on those men who were willing—

"Mr. Wirin: I want to address this Court. I object to that remark of counsel on the ground it is highly prejudicial to the defendant, and we ask the Court to instruct counsel not to make that argument, on the ground it is improper, an unwarranted inference from any of the evidence in this case, and a consciously improper effort by the prosecutor to appeal to the prejudice of the jury.

"Mr. Karesh: I can say, Your Honor, if anyone attempted to appeal to the patience [sic] annd prejudice of anyone, it was you, yourself, counsel.

"Mr. Wirin: Your Honor, we assign that as additional misconduct on the part of the prosecutor and request the Court to instruct the jury to disregard the statement of Mr. Karesh.

"Mr. Karesh: Rather than to quibble, Your Honor, on such an issue, I will withdraw my argument on that point.

"Mr. Wirin: No, we state to the Court the statement made by counsel—

"The Court: What statement?

"Mr. Wirin: The statement made about me is highly improper and an appeal to the prejudice of the jury.

"The Court: Let the statements of both counsel go out and the jury will disregard them for all purposes in this case.

"Mr. Wirin: May we have an exception, Your Honor?

"The Court: Proceed.

"Mr. Karesh: I might say the testimony of the defendant, 'traitor to God,' stands for itself."

It will be noted that a portion of this colloquy was given over to a discussion as to whether or not counsel for the Government had directed a personal animadversion at the counsel for the appellant. The trial court directed that statements of both counsel, complained of in the record, should go out and that the jury should disregard them for all purposes in this case. Counsel for the appellant excepted.

On cross-examination in the lower court, the appellant in explaining his religious views made the following statements:

."The law is, 'Thou shall not kill.' According to my doctrine the taking of life is murder. I have the greatest respect for the fact that those in the Army are making a sacrifice in their own conscience, believing they are doing the right thing, and are above reproach because they believe they are doing the right thing. But from the standpoint of universal law they are committing murder. It is not my opinion; it is already stated in the Bible.

* * * * * *

"I believe that those who go into the Army are doing something incompatible with Christian principles but I do not condemn them for it. I would be a traitor to God if I went into the armed forces."

■ Congress could not and did not overlook the frightful social burdens attendant upon modern and so-called "total war." Our war legislation was designed to spread these burdens as far as is humanly possible in an even and just fashion. Unhappily the sacrifices of the battlefield constitute the outstanding tragic and inescapable burden of war, and the Congress recognized this fact in enacting laws relating to service in the armed forces. It tried to spread this particularly depressing burden in an equitable manner. The right of Congress to impose upon our citizenry the burden of serving in the armed forces is not questioned. The Supreme Court in Arver v. United States, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A.1918C, 361, Ann. Cas.1918B, 856 (cited in Billings v. Truesdell, 321 U.S. 542, 556, 64 S.Ct. 737) makes clear the power of Congress to enlist the manpower of the nation for the prosecution of war and to subject to military service both the willing and the unwilling. Un-

doubtedly the attorney for the Government had this principle in mind when presenting the case against the appellant.

If a prosecutor oversteps the bounds of fair argument and injects into a jury case prejudicial matters entirely outside the testimony and the record, as in the case of Viereck v. United States, 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734, and is culpable in the discharge of his official duties in the trial of the case, as is pointed out in the dissenting opinion of Mr. Justice Black in the case of Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, then a clear case for reversal would be presented. Does the argument of Government counsel in this case convict him of hitting foul blows? We are not constrained to the belief that in his zealousness he overstepped all reasonable bounds of fair comment on the evidence disclosed by the record.

In explaining his attitude in the matter of induction into the armed services, appellant stated, on cross-examination: "From the standpoint of universal law they [those in the Army] are committing murder." He states this to be "my doctrine".

It seems obvious that any prosecutor would make some reference to or comment upon this frank statement. The comments of the prosecutor may seem to approach the borderline, but taken in their entirety, the record disclosed does not, in our judgment, justify a reversal of the conviction.

Judgment affirmed.