## COMMERS v. UNITED STATES.

### No. 276.

District Court, D. Montana, Helena Division.

July 25, 1946.

John W. Mahan and C. E. Pew, both of Helena, Mont., for petitioner.

Francis J. McGan, Atty., Department of Justice, of Butte, Mont., for respondent.

BROWN, District Judge.

Petitioner filed his amended petition for a declaratory judgment, alleging that he is a native born citizen of the United States and a resident of Helena, Montana; that the United States, acting under the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq., drafted him into the military service of the country on the 19th day of October, 1942; that he remained in such service until the 6th day of August, 1945; that upon being selected he took his basic training in infantry in the United States; that he was thereafter assigned to the Sixth Division of the United States Army; that with that Division he was sent to the Pacific theater of war on the 20th day of September, 1943, and took part in several major engagements against the Japanese Army while in that theater of operation; that while so fighting he was wounded in combat action and as a result he is totally unable to follow any substantially gainful occupation at manual work continuously or at all; that prior to his induction into the Army he was earning $200 a

month and is now receiving from the Veterans Administration of the United States the sum of $34.50 a month for his disabilities. He alleges his taking into the Army by the United States constituted slavery and involuntary servitude condemned by the Thirteenth Amendment to the Constitution; that his body was his private property and could not be taken without just compensation under the Fifth Amendment to the Constitution, and that he has a right to maintain the action against the United States without specific consent on its part to be sued other than the consent implied from the Fifth Amendment to the Constitution. He prays for a declaratory judgment of the Court, construing the Fifth, Seventh and Thirteenth Amendments to the Constitution, and declaring that his induction into the Army constituted a taking of his body, and its earning power, his private property, for public use and for which he was entitled to just compensation under the Fifth Amendment; that he has a right to a trial by jury in this court for a determination of the compensation to be paid him.

The respondent has filed a motion to dismiss on the grounds (1) that the amended petition fails to state a claim upon which relief can be granted, and (2) the Court is without jurisdiction to hear and determine this cause for that the United States cannot be sued without its consent and that such consent has not been given.

Extensive oral argument was had before the Court by counsel for the respective parties and a voluminous brief filed. The theory of the petitioner seems to be set out in the following paragraphs of his complaint, which read:

"XV. That by reason of the foregoing, petitioner has been damaged beyond the power of respondent to restore; but that he has been damaged financially to the extent of the cost of a comfortable livelihood, comparable to that enjoyed by the average citizen in comfortable financial circumstances; the cost of all necessary or beneficial hospitalization, and the cost of such education or vocational training as will enable petitioner to receive as much enjoyment out of his remaining life as is reasonably possible."

"XVIII. That the body of petitioner was taken by respondent by virtue of said acts of Congress, and acting through its War Department and the officers and agents thereof, for a public use, to-wit: the defense of the United States against its enemies, and was used by said respondent for such purpose, and as the direct result of such use the body of petitioner has been injured and damaged and his earning power destroyed as herein set forth;"

"XXIII. That under the pronouncement contained in said Declaration of Independence, and under said constitution and the amendments thereto above set forth or referred to, the body of petitioner is his own, and the earning power of his body is his property, and not the property of the United States or of any other group of its citizens; that under the institutions of liberty established by the Constitution each citizen has equal right to life, liberty and the pursuit of happiness, and each citizen has an equal share in the sovereignty of the United States; that when in the course of human events a part of such citizens are required by law to sacrifice their liberty, the pursuit of happiness, and the integrity of their bodies, in the common defense, they do not thereby become the slaves, serfs, or chattels of those who do not fight; to be sacrificed without obligation; but under the compact under which we live, those disabled in the common defense are entitled, not only as a matter of natural right, as between sovereigns, but by the express terms of the Fifth Amendment to said constitution, to be restored as near as may be to a dignified and honorable status among the sovereign people of this democracy, and to just compensation; and they also have the right, as a corollary to the main proposition, to the due process of law and the jury trial in establishing that obligation, guaranteed by said constitution and its amendments;"

"XXVII. That the expenditure of the bodily integrity of man and of his earning power in battle or in any other type of military service in time of war is the taking of private property for a public use, for which the respondent is required to make just compensation under the Fifth Amendment to the Constitution, the same as for earning power in the form of ships, planes, guns, or other processed articles of merchandise, or material of war;"

"XXX. That no consent to be sued, other than the consent implied from the Fifth Amendment, is necessary to entitle petitioner to maintain this action; that moreover, this is not an action for a specific recovery against the respondent, but is a proceeding for a judgment of this Court construing the constitutional provisions herein referred to; that this Court is a Court of general jurisdiction in all matters arising under the constitution or laws of the United States, and has jurisdiction to entertain this action."

The petitioner apparently bases his right to maintain this action upon the theory that his body is private property; that it is owned by him and such being true it falls within the purview of that portion of the Fifth Amendment to the Constitution which provides: "Nor shall private property be taken for public use, without just compensation." Counsel for petitioner have cited no authority holding that since the adoption of the Thirteenth Amendment to the Constitution the body of a human being within the United States is that character of private property referred to in the Constitutional Amendment, or is subject to private ownership. The argument advanced, that the body of the petitioner is private property owned by him which could not be taken for public use without just compensation, is pregnant with the admission that his body owned by him is private property which could be taken for public use upon the payment of just compensation. The taking of the character of private property contemplated by the Fifth Amendment for public use upon the payment of compensation is a taking not limited to times of war, but the right may be exercised equally as lawfully under the Constitution by the United States in times of peace, and to assert that one's body is private property that may be taken by the United States for any governmental purpose of any kind upon the payment of just compensation is to contend for something so far contrary to our theory or government, the relationship of the government and citizens as to be untenable.

In adopting the Constitution the people authorized the Congress to raise and support armies. Article 1, Section 8, Clause 12. This was not only an authorization to Congress, it was also a mandate to Congress to raise and support armies whenever the nation was in peril and under attack by a foreign power, and in enacting the Selective Training and Service Act of 1940, Title 50 Appendix, U.S.C.A., § 301 et seq., the Congress but carried out the constitutional authority granted it. Arver v. United States, Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A.1918C, 361, Ann.Cas.1918B, 856. The power to raise and support armies, granted to the Congress by the Constitution, is neither limited nor conditioned by the Section. It is an unrestricted grant of power unless, as contended by petitioner, the Fifth Amendment to the Constitution conditions the power of Congress to raise and support armies upon payment of just compensation to those inducted into the army. If, as contended by petitioner, his body and its earning power in civilian pursuits is his own private property which cannot be taken without just compensation for a public use, then the taking of his body was not at the time he was injured, but at the time he was inducted into the army. It was at that time that he was prevented from capitalizing on its actual earning power in civilian pursuits and it was at that time that the right to just compensation arose. If the United States paid the petitioner less than $200 a month when he was first taken into the army, he was then earning less than he was when his body was taken, and under his theory just compensation would be the difference between what he was then being paid by the government and what he had been earning when he was taken. The fact that he was wounded and the earning power of his body permanently impaired operates only to entitle him to further compensation for a permanent impairment after his discharge, whereas had he been discharged unwounded and in good bodily health, the payment of just compensation by the government during the time he was in the army and up to and including his discharge would have absolved the government from further obligation. Thus if petitioner's theory is correct, it would appear that in raising an army the United States immediately was under an obligation to pay to every man inducted into the armed forces under the Selective Training and Service Act just compensation for the taking of the body and its earning power and was under a like obligation to pay just compensation to each conscientious objector, who was assigned to and compelled to do work of national importance under the Selective Training and Service Act, because of the taking of his body and its earning power, and each of them immediately became vested with a cause of action against the United States properly triable in this court and before a jury to have the amount of that just compensation fixed.

An examination of the authorities discloses that the contention made here has been uniformly rejected ly every court before whom it has been raised. In Jacobson v. Massachusetts, 197 U.S. 11, at page 29, 25 S.Ct. 358, 362, 49 L.Ed. 643, 3 Ann. Cas. 765, the Supreme Court said: "The liberty secured by the 14th Amendment, this court has said, consists in part, in the right of a person 'to live and work where he will', Allgeyer v. Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832; and yet he may be compelled, by force if need be, against his will and without regard to his personal wishes or his *pecuniary interests,* or even his religious or political convictions, to take his place in the ranks of the army of his country, and risk the chance of being shot down in its defense." (Emphasis supplied.)

In United States v. MacIntosh, 283 U.S. 605 at 620, 51 S.Ct. 570, 574, 75 L.Ed. 1302, the Supreme Court said: " 'That it is the duty of citizens by force of arms to defend our government against all enemies whenever necessity arises is a fundamental principle of the Constitution. The common defense was one of the purposes for which the people ordained and established the Constitution * * *. We need not refer to the numerous statutes that contemplate defense of the United States, its Constitution, and laws by armed citizens.' " At page 622 of 283 U.S., 51 S.Ct. 574, 75 L.Ed. 1302, the Court continues: "The Constitution, therefore, wisely contemplating the

ever-present possibility of war, declares that one of its purposes is to 'provide for the common defense.' In express terms Congress is empowered 'to declare war,' which necessarily connotes the plenary power to wage war with all the force necessary to make it effective; and 'to raise * * * armies' (Const. Art. 1, §§ 11, 12), which necessarily connotes the like power to say who shall serve in them and in what way. From its very nature the war power, when necessity calls for its exercise, tolerates no qualifications or limitations, unless found in the Constitution or in applicable principles of international law. In the words of John Quincy Adams, 'This power is tremendous; it is strictly constitutional; but it breaks down every barrier so anxiously erected for the protection of liberty, property and of life.' To the end that war may not result in defeat, freedom of speech may, by act of Congress, be curtailed or denied so that the morale of the people and the spirit of the Army may not be broken by seditious utterances; freedom of the press curtailed to preserve our military plans and movements from the knowledge of the enemy; deserters and spies put to death without indictment or trial by jury; ships and supplies requisitioned; property of alien enemies, theretofore under the protection of the Constitution, seized without process and converted to the public use without compensation and without due process of law in the ordinary sense of that term; prices of food and other necessities of life fixed or regulated; railways taken over and operated by the government; and other drastic powers, wholly inadmissible in time of peace, exercised to meet the emergencies of war. These are but illustrations of the breadth of the power." This language is not departed from by the Supreme Court in Girouard v. United States, 66 S.Ct. 826.

"It may not be doubted that the very conception of a just government and its duty to the citizen includes the reciprocal obligation of the citizen to render military service in case of need and the right to compel it. Vattel, Law of Nations, Book III, cc. 1 and 2. To do more than state the proposition is absolutely unnecessary in view of the practical illustration afforded by the almost universal legislation to that effect now in force." Arver v. United States Selective Draft Law Cases, supra, at page 378 of 245 U.S., 38 S.Ct. 161, 62 L.Ed. 349, L.R.A.1918C, 361, Ann.Cas. 1918B, 856.

"Appellant attacks the Selective Service Act as unconstitutional on the ground that it prohibits the free exercise of religion, deprives the appellant of liberty and property without due process, and condemns him to involuntary servitude not as punishment for crime also that the Act delegates legislative powers. These propositions, in one guise or another, have been advanced again and again, both in this and in the first World War, and have uniformly met with rejection." Hopper v. United States, 9 Cir., 142 F.2d 181 at page 186; Tatum v. United States, 9 Cir., 146 F.2d 406; Local Draft Board No. 1 of Silver Bow County, Montana, v. Connors, 9 Cir., 124 F.2d 388.

"In view of the breadth of the war power as indicated by the above cases and the cases cited therein, we have no doubt that the system devised for the treatment of persons who by reason of religious training and belief are conscientiously opposed to participation in war in any form does not deprive them of any of their constitutional rights even though, in practical effect, it deprives them of their full liberty and requires them to work at a rate of compensation far below what could be earned in civilian life and even below what could be earned in the armed forces." Weightman v. United States, 1 Cir., 142 F.2d 188 at page 191.

From the foregoing authorities it is apparent that the contention made that the power granted Congress by Article 1, Section 8, Clause 12, to raise and support armies is conditioned or dependent upon the payment of just compensation to those taken into the armed forces, and that such taking constitutes a taking of private property without just compensation, as condemned by the Fifth Amendment to the Constitution, is without merit.

Petitioner next contends that in being taken into the army, as he was taken, he

became a slave or serf and was subjected to involuntary servitude in violation of the Thirteenth Amendment to the Constitution.

■ On the face of it, it is difficult to understand how it can be asserted by a free man, that while fighting to protect his own freedom and to defend and support the Constitution and the form of government that guarantees him the continuance of that freedom and prevents his enslavement, he is then a slave or serf. Upon examination of the authorities it appears that this contention is equally without merit. "Finally, as we are unable to conceive upon what theory the exaction by government from the citizen of the performance of his supreme and noble duty of contributing to the defense of the rights and honor of the nation as the result of a war declared by the great representative body of the people can be said to be the imposition of involuntary servitude in violation of the prohibitions of the Thirteenth Amendment, we are constrained to the conclusion that the contention to that effect is refuted by its mere statement." Arver v. United States, Selective Draft Law Cases, supra, at page 390 of 245 U.S., 38 S.Ct. 165, 62 L.Ed. 349, L.R.A.1918C, 361, Ann. Cas.1918B, 856. Hopper v. United States, supra.

"The answer to appellant's complaint lies in the broad principle that the Thirteenth Amendment has no application to a call for service made by one's government according to law to meet a public need, just as a call for money in such a case is taxation and not confiscation of property * * *. During the First World War convictions for refusing army service were attacked as violations of this amendment. The contention was overruled without being dignified by being argued * * *. The present war is described by its authors as 'total war,' meaning that every means of destruction will be used, and men, women and children alike killed. It means also that total effort may be necessary to resist it, men, women and children all doing what they can. Such a total call has not yet been made by the United States, but is within its power under those parts of the Constitution which authorize Congress to declare war and raise and equip armies. There can be no doubt whatever that Congress has the constitutional power to require appellant, an able-bodied man, to serve in the army, or in lieu of such service to perform other work of national importance. The Thirteenth Amendment abolished slavery and involuntary servitude, except as a punishment for crime, but was never intended to limit the war powers of government or its right to exact by law public service from all to meet the public need." Heflin v. Sanford, 5 Cir., 142 F.2d 798, 799.

"The right of Congress to impose upon our citizenry the burden of serving in the armed forces is not questioned. The Supreme Court * * * makes clear the power of Congress to enlist the manpower of the nation for the prosecution of war and to subject to military service both the willing and the unwilling." Tatum v. United States, 9 Cir., 146 F.2d 406, 407.

■ In view of the unbroken line of decisions of the Supreme Court and of the Circuit Courts of Appeal from the inception of our government, it does not appear how, at this date, it could be earnestly contended that consent on the part of the United States to be sued is not necessary to the maintenance of this action. In Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 844, 78 L.Ed. 1434, the Supreme Court said: "The rule that the United States may not be sued without its consent is all-embracing * * *. The sovereign's immunity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced. It applies alike to causes of action arising under acts of Congress, De Groot v. United States, 5 Wall. 419, 431, 18 L.Ed. 700; United States v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011, and to those arising from some violation of rights conferred upon the citizen by the Constitution, Schillinger v. United States, 155 U.S. 163, 166, 168, 15 S.Ct. 85, 39 L.Ed. 108."

"The United States cannot be sued in their courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and

contingencies in which the liability of the government is submitted to the courts for judicial determination. Beyond the letter of such consent the courts may not go, no matter how beneficial they may deem, or in fact might be, their possession of a larger jurisdiction over the liabilities of the government." Schillinger v. United States, 155 U.S. 163 at page 166, 15 S.Ct. 85, at page 86, 39 L.Ed. 108.

The contention made that aside from any act of Congress this Court has jurisdiction of the action because of the provisions of the Fifth Amendment to the Constitution is equally untenable.

■ It is too well settled to be the subject of argument that the Federal District Courts have only such jurisdiction as the Congress may give them. "All federal courts, other than the Supreme Court, derive their jurisdiction wholly from the exercise of the authority to 'ordain and establish' inferior courts, conferred on Congress by Article III, § 1 of the Constitution. Article III left Congress free to establish inferior federal courts or not as it thought appropriate. It could have declined to create any such courts, leaving suitors to the remedies afforded by state courts, with such appellate review by this Court as Congress might prescribe * * *. The Congressional power to ordain and establish inferior courts includes the power 'of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to the Congress may seem proper for the public good.'" Lockerty v. Phillips, 319 U.S. 182 at page 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339.

■ It is equally well recognized that Congress may create rights in individuals against the United States and establish special tribunals, aside from the courts, to administer and enforce the rights created. Congress is not required to provide that the enforcement of those rights in a contest between the individual and the United States be through the courts, although it may well have done so. "When the United States creates rights in individuals against itself, it is under no obligation to provide a remedy through the courts. United States v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011. It may limit the individual to administrative remedies. Tutun v. United States, 270 U.S. 568, 576, 46 S.Ct. 425, 70 L.Ed. 738." Lynch v. United States, supra, at page 582 of 292 U.S., 54 S.Ct. 845, 78 L.Ed. 1434. Cf. Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256.

■ Congress has created rights against the United States insofar as the plaintiff in the action is concerned, in the enactment of the World War Veterans' Act of 1924, 38 U.S.C.A. § 421 et seq., and similar legislation. It provided also for the administration and enforcement of these rights by the Administrator of Veterans Affairs. It thus created a special tribunal to administer, execute and enforce its legislation as it had the constitutional power to do. The argument that Section 426 of Title 38, U.S.C.A. and Section 705 of Title 38, U.S.C.A., giving to the Administrator the power to decide all questions arising, making his decisions on questions of fact conclusive and providing that no court of the United States shall have jurisdiction to review such decisions, is an unconstitutional exercise of the power of Congress is without merit. It is but an exercise of its constitutional power to give or withhold from the District Courts such jurisdiction as it sees fit. If, as contended, Congress was unwise in so providing in this instance, the only relief to plaintiff is by Congressional action and not by an appeal to the courts.

Congress has frequently exercised its right to establish special tribunals for the enforcement of rights against the United States, containing like provisions as to the finality of the findings of the tribunals as to questions of fact and Congress has uniformly been sustained, as for illustration Section 310 of Title 50 U.S.C.A.Appendix, with reference to the decisions of the Local draft boards, Local Draft Board No. 1 of Silver Bow County, Montana v. Connors, supra; the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq. establishing the Emergency Court of Appeals and withholding from the lower

Federal Courts jurisdiction to pass upon the questions passed upon by that Court and making its decisions reviewable only by the Supreme Court. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. Many other illustrations could be cited.

From the foregoing it necessarily follows that no actual controversy of a justiciable nature does or can exist and the motion made by the respondent to dismiss the action should be and hereby is sustained upon each of the grounds set forth in the motion and the action is ordered dismissed.

The petitioner is granted an exception to the ruling of the Court.