**Edward HAASE, Appellant**

v.

**William H. WEBSTER, Director, F.B.I., et al.**

**No. 85–5816.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 22, 1986.

Decided Dec. 9, 1986.

David D. Cole, with whom Michael D. Ratner, New York City, and John J. Privitera, Washington, D.C., were on brief, for appellant. Frank E. Deale, New York City, also entered an appearance for appellant.

Edith S. Marshall, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees.

Before WALD, Chief Judge, BUCKLEY, Circuit Judge, and EDWARD D. RE,* Chief Judge, United States Court of International Trade.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Edward Haase appeals the district court's dismissal of his complaint for injunctive and declaratory relief against the Director of the Federal Bureau of Investigation ("FBI"), the Commissioner of the U.S. Customs Service ("Customs"), and a number of their subordinates. The complaint arose out of a search of Haase's luggage upon his return to the United States from a trip to Nicaragua. The district court ruled that Haase's request for injunctive relief had been mooted by developments subsequent to the search, and that Haase was without standing to seek declaratory relief. For the reasons stated below, we affirm the district court's ruling with respect to the injunctive relief sought by Haase and reverse its ruling with respect to Haase's request for declaratory relief.[1]

### I. FACTUAL BACKGROUND

Edward Haase is a broadcast engineer and freelance journalist from Kansas City, Missouri. As a journalist, he has taken an active interest in Nicaraguan affairs and has written articles critical of United States policy toward that country. He is also active in organizations that share his opposition to U.S. policy in Central America.

Haase has traveled to Nicaragua on several occasions and on January 16, 1985, was returning to the United States from one such trip. Upon arriving at Miami International Airport, he presented himself at Customs and was asked a number of routine questions. The customs inspector circled certain information on his declaration card (including the country visited, the length of his stay, and the fact that he was declaring books, magazines, and newspapers acquired in Nicaragua) and directed him to a secondary inspection station. At that station, another customs inspector searched Haase's bags and separated some

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1982 & Supp.1985).

1. On September 17, 1986, counsel for appellant requested that this court defer ruling on this appeal because appellant had filed an independent action (based on new evidence) for relief from judgment in the district court, and settlement negotiations in a related case against the same defendants had reached an advanced stage. We see no reason to delay our disposition of this appeal as it will not affect either of these new developments.

books and magazines from Haase's other possessions. Because of uncertainty as to whether some of the books and magazines might be seditious, the inspector conferred with his supervisor, who decided to obtain FBI assistance in determining whether these materials might be excludable under 19 U.S.C. § 1305(a) (1982).[2]

The FBI dispatched an agent to the airport in response to Customs' request. At some point prior to the agent's arrival (the record is unclear as to whether this occurred before or after the FBI was summoned), the second customs inspector found a list of names and addresses that appeared to have been hidden behind a picture frame. The inspector photocopied this list and gave the copy to the FBI agent when he arrived.

The FBI agent briefly questioned Haase and then began to search his luggage for subversive materials. Among the items removed from Haase's bags were his personal address book, a diary containing thoughts recorded during his sojourn in Nicaragua, two articles he had written while out of the country, more magazines, and a five-page list setting forth the names, addresses, and telephone numbers of organizations and individuals concerned about Central American affairs. The FBI agent and a customs officer photocopied these materials and returned the originals to Haase, who was then allowed to pass through Customs and continue his trip to Kansas City.

The photocopies were taken by the FBI agent to his office, where they were kept for the next several weeks. During this period, Haase's attorney twice contacted the FBI's Miami field office to ask for return of the copies, but these efforts were unavailing.

## II. DISTRICT COURT PROCEEDINGS

On February 19, 1985, Haase brought an action in district court claiming that the conduct of the FBI and customs agents on January 16 violated his rights under the first, fourth, fifth, and ninth amendments, infringed his right to privacy, and was *ultra vires* the agents' statutory authority. Haase sought two types of relief. First, he asked for an injunction requiring the government to (1) return or destroy all copies of his papers, (2) disclose all agencies or persons to whom the copies were disseminated, (3) expunge from government files all information gained from his papers, and (4) describe all use made by the FBI of the copies. The second form of relief sought by Haase was a declaration that the seizure and reproduction of his papers violated his constitutional and statutory rights, that it is unlawful for FBI agents to participate in border searches without probable cause or a warrant, and that 19 U.S.C. § 1305(a) is unconstitutional.

On the day the action was commenced, the district court issued a temporary restraining order (1) compelling the government to collect all copies of Haase's papers and place them in the personal custody of

2. 19 U.S.C. § 1305(a) provides in pertinent part as follows:

All persons are prohibited from importing into the United States from any foreign country any book, pamphlet, paper, writing, advertisement, circular, print, picture, or drawing containing any matter advocating or urging treason or insurrection against the United States, or forcible resistance to any law of the United States, or containing any threat to take the life of or inflict bodily harm upon any person in the United States.... Upon the appearance of any such book or matter at any customs office, the same shall be seized and held by the appropriate customs officer to await the judgment of the district court as hereinafter provided; .... Upon the

seizure of such book or matter such customs officer shall transmit information thereof to the United States attorney of the district in which is situated the office at which such seizure has taken place, who shall institute proceedings in the district court for the forfeiture, confiscation, and destruction of the book or matter seized. Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and shall be destroyed. Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.

FBI Director William Webster in Washington, DC, (2) forbidding the government from making any additional copies, and (3) requiring the government to disclose to the court all agencies to which the documents had been disseminated. Haase subsequently filed a motion requesting expedited discovery, but the government sought and was granted an order staying all discovery.

On March 26, 1985, the government moved for dismissal of Haase's complaint pursuant to Fed.R.Civ.P. 12(b). The government's motion asserted that Haase's complaint was moot insofar as it sought injunctive relief, and that Haase was without standing to seek declaratory relief. In support of its mootness claim, the government stated that it was prepared to place all copies of Haase's papers under seal in the registry of the district court. The government explained that it believed this procedure necessary in order to avoid violation of the district court order in *American Friends Service Committee v. Webster*, No. 79–1655 (D.D.C. Aug. 27, 1981), *aff'd in relevant part*, 720 F.2d 29 (D.C.Cir. 1983), which prohibited the FBI from destroying or returning seized records without first arranging for an archivist to review the records to assess their historical significance. The government also submitted affidavits from all persons who at any time had custody of the papers establishing that the papers had not been reproduced, that the FBI's Miami field office had not disseminated information derived from the papers to other FBI field offices or other government agencies, and that no new files had been created and no existing files augmented as a result of the FBI's acquisition of the papers. An affidavit was also submitted from an assistant director of the FBI stating that he had ordered all persons who at any time had access to the papers to not disclose any information gained from the papers and not place any such information in government files. The government promised that this order would remain in effect if the district court granted its motion to dismiss.

On April 18, 1985, Haase filed an amended complaint which alleged for the first time that the January 16 incident was the product of a policy of subjecting travelers returning from Nicaragua to intrusive border searches for intelligence-gathering purposes. This allegation was supported by an affidavit of Haase's attorney that recounted the experiences of other travelers who claimed they had been subjected to intrusive border searches upon returning from Nicaragua. Haase also submitted a number of newspaper articles that described such searches, and an additional affidavit in which he explained his plans to return to Nicaragua and the chilling effect that his fear of future border searches will have on his journalistic activities there. On the basis of his amended complaint and supporting materials, Haase argued that he had standing to seek declaratory relief.

The district court ruled on the government's motion to dismiss on May 14, 1985. *See Haase v. Webster*, 608 F.Supp. 1227 (D.D.C.1985). Noting that the motion had been supported and opposed by affidavit, the court stated that, pursuant to Fed.R. Civ.P. 12(b), it would treat the motion as one for summary judgment. *Id.* at 1229 n. 1. With respect to Haase's request for injunctive relief, the court ruled that by establishing that Haase's papers had not been disseminated, offering to divest itself of all copies, and promising to prevent future dissemination, the government had "in effect, offered to accede to all the equitable relief [Haase] could conceivably win by way of injunction...." *Id.* at 1231. The court therefore dismissed as moot Haase's request for injunctive relief. This dismissal was conditioned on placement of all copies of Haase's papers under seal in the registry of the district court.

The court then considered whether Haase had standing to seek declaratory relief. Relying principally on *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the court ruled that Haase's request for prospective relief did not rise to the level of a case or controversy under article III of the Constitution because he had not demonstrated a sufficient probability that he would be subjected

to another search like that of January 16. The court reasoned that it was highly unlikely that Haase would again arouse suspicion by carrying a list of names and addresses behind a picture frame, or that the FBI would again be asked to assist Customs in searching him at a border. The court rejected Haase's allegation of an official policy of harassing travelers returning from Nicaragua as "altogether too phantasmal to warrant discovery of the magnitude which would be necessary to bring such a covert 'policy' to light." *Id.* at 1234. The court accordingly dismissed Haase's request for declaratory relief for want of standing.

Pursuant to the district court's order, the government deposited all copies of Haase's papers with the court clerk, along with two other documents produced by an FBI agent as a result of the January 16 search. The court then entered an order placing all of these documents under seal and prohibiting all access to the documents without leave of court.

### III. DISCUSSION

Haase contends on appeal that the district court should not have entered summary judgment against him on either of the two forms of relief sought in his complaint. With respect to his request for injunctive relief, he claims that the court was required to afford him a chance to cross-examine the FBI agents who had custody of his papers before dismissing the request as moot. With respect to his request for declaratory relief, he claims that the court misapplied controlling legal principles and improperly resolved disputed issues of material fact against him in dismissing the request for want of standing. We consider these arguments below.

#### A. *Injunctive Relief*

Haase concedes that the government's offer to surrender his papers to the district court and make no use of information derived from the papers rendered his request for injunctive relief moot *if* there was no prior dissemination of information derived

from the papers. He contends, however, that the court erred in believing the affidavits submitted by the government in which all of the persons who were at any time custodians of the papers stated under oath that there had been no such dissemination. Haase submitted no credible evidence tending to establish that there had been dissemination, but he nevertheless claims that he was entitled to cross-examine the government's affiants because they are in exclusive possession of information pertinent to the dissemination issue. We disagree.

It is well settled that mere suspicion that an affiant may be lying does not create a genuine issue of material fact sufficient to preclude summary judgment under Fed.R.Civ.P. 56(c). *See, e.g., Alsbury v. United States Postal Service,* 530 F.2d 852, 855–56 (9th Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976). Though summary judgment may be denied "when essential facts are solely within the control of the moving party ...," *Mazaleski v. Treusdell,* 562 F.2d 701, 717 (D.C.Cir. 1977), the court is not required to deny summary judgment in this circumstance if there is no reason to doubt the veracity of the moving party's affirmations. Because Haase offered no evidence contradicting the government's affidavits or impeaching their credibility, we hold that the district court did not err in entering summary judgment against Haase on his request for injunctive relief.

Haase further argues that the district court erred in allowing the government to place his papers under seal in the court's registry rather than requiring the government to return the papers to him. Relying on *Hobson v. Wilson,* 737 F.2d 1, 64–66 (D.C.Cir.1984, *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985), he argues that the government and the court were incorrect in assuming that the court order in *American Friends Service Committee v. Webster,* No. 79–1655 (D.D.C. Aug. 27, 1981), prevented the FBI from returning the papers without archival review. We do not decide this issue, however, because it was not raised by Haase in

the district court. To the contrary, Haase apparently shared what he now considers to be the government's and the court's misunderstanding of the *American Friends Service Committee* order. *See* Plaintiff's Memorandum In Opposition to Defendants' Motion to Dismiss at 10.

This court has held that issues can be considered for the first time on appeal only "in exceptional circumstances, where injustice might otherwise result...." *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1085 (D.C.Cir.1984). Because we perceive no prejudice to Haase from the district court's disposition of his papers, much less injustice, we conclude that the issue is not properly before us.

### B. *Declaratory Relief*

In concluding that Haase was without standing to seek declaratory relief, the district court relied principally upon *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). In *Lyons*, the Supreme Court dismissed for want of standing a citizen's request for an injunction prohibiting future police use of a choke hold to which he had once been subjected. The Court reasoned that the plaintiff was without standing because he had offered no evidence establishing "a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id.* at 105, 103 S.Ct. at 1667.

Haase asserts that the district court misapplied *Lyons* in the instant case in three respects:

First, it failed to accord any weight to plaintiff's continuing First Amendment injuries, which, when properly considered, make the *Lyons* test inapplicable to this case. Second, even disregarding plaintiff's First Amendment injuries, the court misapplied the standards set forth by the Supreme Court in [*Lyons*], dismissing Haase despite his having met all the *Lyons* requirements for standing. Finally, the Court made two premature

[factual determinations] that infected its faulty standing analysis.

Appellant's Br. at 29. In addition to these substantive arguments, Haase presents the procedural argument that, insofar as the government's motion to dismiss related to his request for declaratory relief, the district court erred in treating it as a motion for summary judgment.

As explained below, our analysis of Haase's three substantive arguments persuades us that the critical issue in this case is the district court's treatment of Haase's allegation that he was the victim of a government policy of subjecting travelers returning from Nicaragua to intrusive border searches for intelligence-gathering purposes. All three substantive arguments derive their vitality from this allegation, and, as emphasized by Haase, the allegation was never formally denied by the government.

We recognize that the government's failure to deny the existence of such a policy may be attributable to the fact that Haase did not amend his complaint to plead the policy until after the government moved to dismiss his original complaint, but we nevertheless must conclude that the record in this case was inadequate to support the district court's rejection of the allegation. With respect to Haase's claim of procedural error, we conclude that to the extent there was such error, it worked to the detriment of the government by denying the government an opportunity to respond to the allegations of the amended complaint. Accordingly, we remand Haase's request for declaratory relief with instructions that the government be afforded an opportunity to deny, by affidavit or otherwise, the claim that Haase is threatened by the alleged policy.

Haase's first substantive argument, that the first amendment chill that he has suffered as a result of the January 16 incident gives him standing irrespective of *Lyons*, must be analyzed in light of *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). In *Laird*, the Supreme Court rejected a similar standing claim because

"[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm...." *Id.* at 13–14, 92 S.Ct. at 2325–26. Haase claims that, in contrast to the plaintiffs in *Laird,* he has alleged specific harm in the past and a policy that realistically threatens him with specific future harm.

Whether these allegations are sufficient to withstand a motion to dismiss for want of standing is a question that cannot easily be answered by reference to previous decisions of this court. *Compare United Presbyterian Church in the U.S.A. v. Reagan,* 738 F.2d 1375, 1380 (D.C.Cir.1984) (allegations of specific past harm and a policy that threatens plaintiffs with future harm "fall far short" of establishing standing), *with Clark v. Library of Congress,* 750 F.2d 89, 93 (D.C.Cir.1984) (plaintiff has standing to challenge a practice "resulting in concrete harms to his reputation and employment opportunities."). Fortunately, we need not decide whether Haase's allegations are sufficient to establish standing under these decisions, for it is clear that, on motion for summary judgment, he must be denied standing if it is shown that there is no truth to his allegation of a government policy directed toward travelers returning from Nicaragua. If there is no such policy, or if whatever policy exists does not realistically threaten him, he is not suffering "specific present objective harm" or a cognizable "threat of specific future harm," but rather a purely "subjective 'chill,'" which the Supreme Court has unequivocally rejected as a basis for standing. *Laird,* 408 U.S. at 13–14, 92 S.Ct. at 2325–26. Because we conclude, for the reasons stated below, that Haase must be granted standing under *Lyons* if the district court concludes that he is realistically threatened by a government policy of the type alleged, we find it unnecessary to decide whether proof that he is threatened by such a policy would confer standing under *Laird, United Presbyterian,* and *Clark.*

The second substantive argument presented by Haase for overruling the district court's denial of standing is that he satisfied the *Lyons* test of standing regardless of whether that test applies in this case given the chill to his first amendment rights. In making this argument, Haase relies on the following *dictum* from the *Lyons* opinion:

> In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that the City ordered or authorized police officers to act in such manner.

*Lyons,* 461 U.S. at 105–06, 103 S.Ct. at 1667. Haase contends that he did in this case precisely what the Supreme Court in *Lyons* said he must do—he alleged that he plans to visit Nicaragua in the future, and that there is an official policy ordering or authorizing Customs and FBI agents to harass him upon his return. Accordingly, he claims that he must be granted standing under *Lyons.*

We do not believe that the Supreme Court intended the *dictum* relied upon by Haase as a formula to be applied in every case. Rather, we interpret it as a statement of what the plaintiff in *Lyons* would have had to plead under the facts of that case in order to withstand a motion to dismiss for want of standing. We think the operative test of *Lyons* is set forth in the following statement from the opinion: "If Lyons has made no showing that he is realistically threatened by a repetition of his experience ... then he has not met the requirements for seeking an injunction in a federal court...." *Id.* at 109, 103 S.Ct. at 1669.

Under this test, the critical issue once again is whether there is a government policy of the sort alleged by Haase. If there is no such policy, Haase is not "realistically threatened by a repetition of his experience ...," and therefore is not enti-

tled to standing under *Lyons*. If there is such a policy, the district court must determine whether it realistically threatens Haase with a repetition of the January 16 search. Because we conclude that the district court did not adequately assess whether the alleged policy poses a realistic threat to Haase, we must reverse the court's dismissal of his request for declaratory relief. If on remand the government denies the existence of the alleged policy, Haase's request for declaratory relief must be dismissed for want of standing. If the government does not deny the allegation, or establish by affidavit or otherwise that such policy as exists poses no realistic threat to Haase, the court will have to permit limited discovery for purposes of determining whether Haase is realistically threatened with a repetition of his experience of January 16. If the court determines that he is so threatened, *Lyons* requires that he be granted standing to seek declaratory relief.

Haase's third substantive argument is that the court improperly resolved two disputed issues of material fact against him at the summary judgment stage. First, he claims that the court erred in rejecting his allegation of a government policy directed at travelers returning from Nicaragua when that allegation was never formally denied by the government and the only pertinent evidence in the record was an affidavit by his lawyer describing other incidents similar to that of January 16. Second, he claims that the court erred in concluding that the January 16 incident could be explained by Customs' discovery of a list of names and addresses that appeared to be hidden behind a picture frame when the record was unclear as to whether this list was found before or after Customs asked for FBI assistance at the airport.

We are persuaded that Haase is correct in his assessment of the state of the record with regard to both of these factual issues. It follows that the district court's resolution of these issues against Haase violated the settled rule that, in deciding motions for summary judgment, courts must "accord the opposing party all favorable infer-

ences that may be drawn from the proffered evidence...." *McSurely v. McClellan,* 697 F.2d 309, 321 (D.C.Cir.1982). We cannot agree with the government that Haase's allegation of a government policy was too conclusory to permit application of this rule. While "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss," *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), we think that Haase's complaint and supporting affidavits set forth in sufficient detail "the factual basis necessary to enable appellees intelligently to prepare their defense...." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). We therefore conclude that the district court's determination that Haase was without standing to seek declaratory relief must be reversed for the additional reason that it was based on factual determinations that were not adequately supported by the record.

The final argument presented by Haase for overruling the district court is the procedural claim that, insofar as the government's motion to dismiss related to his request for declaratory relief, the court erred in treating it as a motion for summary judgment. In making this argument, Haase relies on the following language from Fed.R.Civ.P. 12 (b):

> If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Haase asserts that the affidavits submitted by the government in support of its motion to dismiss related only to its claim that his request for injunctive relief was moot and did not bear on its claim that he was without standing to seek declaratory relief. Because the government presented no

"matters outside the pleading" with respect to the request for declaratory relief, Haase reasons, the district court could not properly treat the government's motion as one for summary judgment on this request.

The flaw in this argument is that it ignores the fact that, in opposing the government's motion to dismiss, Haase submitted affidavits in support of his standing claim. Thus, while the government's motion and supporting affidavits did not by themselves permit the court to consider the motion as one for summary judgment on the request for declaratory relief, this defect was cured by Haase's opposition to the motion. *See Basel v. Knebel,* 551 F.2d 395, 398 n. 2 (D.C.Cir.197). *See also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366, at 677 (1969) ("Either the pleader or the moving party or both may bring the conversion provision [of Rule 12(b)] into operation by submitting extraneous matters.").

Haase's reliance on the language of Rule 12(b) does, however, point up another error in the district court's handling of the government's motion and Haase's opposition thereto. Rule 12(b) provides that, upon conversion of a motion to dismiss into one for summary judgment, "all parties shall be given reasonable opportunity" to submit evidence admissible under Rule 56. This court has previously held that "reasonable opportunity" requires notice to the parties that the plaintiff's complaint, or some portion thereof, is to be considered on the merits. *Gould, Inc. v. Chafee,* 450 F.2d 667, 669 (D.C.Cir.1971).

In this case, approximately three weeks after the government moved to dismiss his original complaint, Haase amended his complaint to allege a policy of harassing travelers returning from Nicaragua. Haase also submitted affidavits at this time in support of his claim that, because of this policy, he had standing to seek declaratory

relief. Less than four weeks later, on May 14, 1985, the district court entered summary judgment on the request for declaratory relief. The record does not disclose that the government was notified that a merits determination was to be made on this portion of the complaint. The government accordingly submitted no affidavits or other evidence with respect to the declaratory relief request or the crucial question of whether there was a governmental policy that realistically threatened Haase with future injury. Indeed, as noted by Haase, the government never formally denied or otherwise responded to his allegation of a government policy.

In order to correct this deficiency in the record caused by the district court's failure to notify the government that Haase's declaratory relief request was to be considered on the merits, we think that the government must be afforded an opportunity on remand to rebut the claim that Haase is threatened by a government policy directed toward travelers returning from Nicaragua.[3] If the government is unable to deny the existence of the alleged policy or demonstrate by affidavit or otherwise that such policy as exists poses no realistic threat to Haase, the district court must permit limited discovery for purposes of determining whether Haase has standing under *City of Los Angeles v. Lyons.*

We recognize that these instructions may limit Haase's ability on remand to establish standing, inasmuch as he may be deprived of any opportunity to take discovery with respect to the policy that he has alleged. These constraints are necessary, however, given the extremely sensitive subject matter of this case. As the Supreme Court has observed in an analogous context:

> Stripped to its essentials, what [plaintiffs] appear to be seeking is a broadscale investigation, conducted by themselves as private parties armed with the

---

**3.** In addition to failing to notify the parties that Haase's request for declaratory relief was to be considered on the merits, the district court failed to notify them that the request for injunctive relief was to be similarly considered. We deem this error harmless, however, because even without such notice Haase submitted two affidavits in support of his request for injunctive relief. *See* Second Affirmation of Michael Ratner; Affirmation of Ann Mari Buitrago. We therefore find it unnecessary to order the court to reopen its dismissal of this request.

subpoena power of a federal district court and the power of cross-examination, to probe into the Army's intelligence-gathering activities, with the district court determining at the conclusion of that investigation the extent to which those activities may or may not be appropriate to the Army's mission.

.    .    .    .    .

Carried to its logical end, this approach would have the federal courts as virtually continuing monitors of the wisdom and soundness of Executive action; such a role is appropriate for the Congress acting through its committees and the "power of the purse"; it is not the role of the judiciary, absent actual present or immediately threatened injury resulting from unlawful governmental action.

*Laird v. Tatum,* 408 U.S. at 14–15, 92 S.Ct. at 2326. We think that the instructions that we have provided will adequately protect Haase's right to obtain all relief to which he is legally entitled while minimizing unnecessary and potentially dangerous judicial intrusion into FBI and Customs operations.

## IV. Conclusion

For the reasons stated above, we affirm the district court's dismissal of Haase's request for injunctive relief and reverse its dismissal of his request for declaratory relief. The latter request is remanded to the district court for proceedings consistent with this opinion.

*It is so ordered.*