**Albert HESS, Plaintiff,**

v.

**PORT AUTHORITY TRANS–HUDSON CORPORATION (PATH), Defendant.**

**Civ. A. No. 90–2150 (AJL).**

United States District Court, D. New Jersey.

Dec. 21, 1992.

Patrick Henigan, Coffey & Kaye, Bala Cynwyd, PA, for plaintiff.

Hugh H. Welsh, Donald F. Burke, Newark, NJ, for defendant.

## OPINION

LECHNER, District Judge.

This is a personal injury action brought by plaintiff Albert Hess ("Hess") against defendant Port Authority Trans–Hudson (the "Port Authority"). Currently before the court is the motion of the Port Authority to dismiss the complaint (the "Com-

plaint"), filed 31 May 1990,[1] for lack of subject matter jurisdiction.[2]

For the reasons set forth below, the motion to dismiss is granted.

Facts

Hess is a citizen and resident of the State of New Jersey. Complaint, ¶ 1. Port Authority is an agency of the States of New York and New Jersey, created by an Interstate Compact to which the United States Congress assented. Moving Brief at 1; *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 301, 110 S.Ct. 1868, 1870, 109 L.Ed.2d 264 (1990). Port Authority operates various terminal, transportation and other facilities within the statutorily-defined "Port District" of New York and New Jersey, in part through its wholly-owned subsidiary PATH Interstate Railway System ("PATH"). Moving Brief at 1.

The facts of this lawsuit are not complex. On 29 June 1987, at approximately 6:30 a.m., Hess was injured in the course of his duties while employed by the Port Authority. Complaint, ¶ 10. According to Hess, he was working in the engine of a commuter train proceeding from 33rd Street in New York City to Hoboken, New Jersey when, "the window in said train malfunctioned and struck [Hess'] right hand." *Id.* According to Hess, the accident "was caused by the negligence of [the Port Authority], its agents, servants and/or employees ... and was due in no manner whatsoever to any act or failure to act on the part of [Hess]." *Id.*, ¶¶ 5, 9–11.

Hess claims that, as a result of the accident, he has sustained "soft tissue injury to the right hand; superiostela hematoma of the right hand and injury to the tissues and muscles of the righthand."[3] *Id.*, ¶ 12. Moreover, "[s]ome or all of the above injuries are or may be permanent in nature. The full extent of [Hess'] injuries are not presently known." *Id.* Hess also claims:

> As a result of the accident ... [he] has suffered a loss and impairment of earnings and earning power and will suffer the same for an indefinite time in the future; has undergone great physical pain and mental anguish and will undergo the same for an indefinite time in the future; has been obliged to and will have to continue to expend large sums of money in the future in an effort to effect a cure of his ... injuries; and has been unable to attend his usual duties and occupation and will be unable to attend to the same for an indefinite time in the future, all to his great detriment and loss.

*Id.*, ¶ 8.

Hess filed the Complaint on 31 May 1990, almost three years after the accident. Hess seeks damages "in excess of [f]ifty [t]housand [d]ollars pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* and the Boiler Inspection Act, 45 U.S.C. § 23. *Id.* ¶¶ 2, 12.

Discussion

The Port Authority seeks a dismissal of the Complaint on the ground that the Eleventh Amendment bars this suit because of Hess' failure to comply with the provisions on N.J.S.A. § 32:1–163. Moving Brief at 3. According to the Port Authority, this section requires suit against it to be filed within one year from the date of any alleged accident. *Id.*

---

1. In support of the motion to dismiss, the Port Authority has submitted the following: Memorandum of Law on Behalf of Defendant Port Authority Trans–Hudson Corporation in Support of Its Motion to Dismiss (the "Moving Brief"); Memorandum of Law on Behalf of Defendant Port Authority Trans–Hudson Corporation in Reply to Plaintiff's Opposition to PATH's Motion to Dismiss Returnable on December 14, 1992 (the "Reply Brief").

   In opposition to the motion to dismiss, Hess has submitted the following: Plaintiff's Response to Defendant's Motion to Dismiss (the "Opp. Brief").

   Oral argument was held on 15 December 1992.

2. Although the Port Authority fails to cite the rule of procedure pursuant to which the motion is brought, it appears that such a motion is appropriate under Fed.R.Civ.P. 12(h)(3).

3. At oral argument, counsel for the Port Authority characterized Hess' injury as a mere "bruise." Transcript of Oral Argument (the "Oral Arg. Tr."), dated 15 December 1992, at 2–3. Counsel for Hess countered that the injury sustained was actually a "bone bruise." *Id.*

The Port Authority argues that (1) it is an arm of the States of New York and New Jersey and, therefore, enjoys Eleventh Amendment immunity and (2) even though the Supreme Court has held that New York and New Jersey waived the Port Authority's Eleventh Amendment immunity when they respectively passed consent to suit statutes (the "Consent to Suit Statutes"), *see Feeney*, 495 U.S. at 308–09, 110 S.Ct. at 1874–75, that waiver was only in accordance with the statutory conditions to suit embodied in the Consent to Suit Statutes. Moving Brief at 3–7. Thus, because the Consent to Suit Statutes have a one-year limitations period, the Port Authority argues Hess' action is time-barred. *Id.* at 8.

Hess counters these arguments by contending that *Feeney* stands for the proposition that the Port Authority has waived Eleventh Amendment Immunity entirely and that, in any event, the provisions of the Consent to Suit Statutes have no relevance to an action brought pursuant to FELA. Opp. Brief at 3–6. Hess cites *Hilton v. South Carolina Public Railways Comm'n*, —— U.S. ——, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) as holding that "any sovereign immunity which may be held by state owned railroads under a state's common law has been abrogated by ... FELA." Opp. Brief at 3. Thus, "pursuant to *Hilton*, [Hess] does not need any consent by [the Port Authority] to bring suit under ... FELA." *Id.* Hess also argues that, even if the Consent to Suit Statutes are relevant to this case, the one year limitations period cannot supersede the three year limitations period provided by FELA. *Id.* at 6–8.

## A. Motion to Dismiss—Standard of Review

On a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), all allegations of the plaintiff must be taken as true and all reasonable factual inferences drawn in his or her favor. *Gomez v. Toledo*, 446 U.S. 635, 636, 100 S.Ct. 1920, 1921, 64 L.Ed.2d 572 (1980); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991); *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1395 (3d Cir.1991); *Markow-*

*itz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990); *Melikian v. Corradetti*, 791 F.2d 274, 277 (3d Cir.1986).

■ Nevertheless, legal conclusions made in the guise of factual allegations are not given the presumption of truthfulness. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986); *Haase v. Webster*, 807 F.2d 208, 215 (D.C.Cir.1986); *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Western Mining Council v. Watt*, 643 F.2d 618, 626 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

Accordingly, a court may dismiss a complaint for failure to state a claim when it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Unger*, 928 F.2d at 1395 (3d Cir); *Markowitz*, 906 F.2d at 103; *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988). However, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102; *accord Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Unger*, 928 F.2d at 1395; *Angelastro v. Prudential–Bache Secur., Inc.*, 764 F.2d 939, 944 (3d Cir.), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

Additionally, the Supreme Court has stated that a federal court reviewing the sufficiency of the complaint has a limited role. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Estate of Bailey v. County of York*, 768 F.2d 503, 506 (3d Cir.1985).

**B.** *Eleventh Amendment Immunity*

The Eleventh Amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. Well established law governs application of the Eleventh Amendment. *Feeney*, 495 U.S. at 304, 110 S.Ct. at 1872. As the Supreme Court has recently stated:

Since *Hans v. Louisiana*, 134 U.S. 1 [10 S.Ct. 504, 33 L.Ed. 842] (1890), we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it affirms: that the States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty.

*Blatchford v. Noatak*, — U.S. —, —, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991); *accord Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472, 107 S.Ct. 2941, 2945, 97 L.Ed.2d 389 (1987).

Stated differently, the Supreme Court "has drawn upon principles of sovereign immunity to construe the [Eleventh] Amendment to "establish that 'an unconsenting State is immune from suits brought in *federal* courts [4] by her own citizens as well as by citizens of another state.'" *Feeney*, 495 U.S. at 304, 110 S.Ct. at 1872 (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (quoting *Em-*

ployees v. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280, 93 S.Ct. 1614, 1616, 36 L.Ed.2d 251 (1980))) (emphasis added); *accord Welch*, 483 U.S. at 472, 107 S.Ct. at 3271.

The Eleventh Amendment bar to suit is not absolute. *Blatchford*, — U.S. at —, 111 S.Ct. at 2581; *Feeney*, 495 U.S. at 304, 110 S.Ct. at 1872. Two events may render the Eleventh Amendment inapplicable. First, in certain cases, Congress may abrogate a state's sovereign and/or Eleventh Amendment Immunity.[5] *Blatchford*, — U.S. at —, 111 S.Ct. at 2581; *Feeney*, 495 U.S. at 304, 110 S.Ct. at 1872; *Dellmuth v. Muth*, 491 U.S. 223, 227, 109 S.Ct. 2397, 2399, 105 L.Ed.2d 181 (1989). Second, states may consent to suit in federal court, in which case Eleventh Amendment immunity is waived. *Feeney*, 495 U.S. at 304, 110 S.Ct. at 1872; *Will*, 491 U.S. at 66, 109 S.Ct. at 2309; *Welch*, 483 U.S. at 473, 107 S.Ct. at 2945; *Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907.

In the first instance, the Court has adopted "a particularly strict standard" to evaluate claims that Congress has abrogated a state's sovereign and Eleventh Amendment immunity. *Gregory*, — U.S. at —, 111 S.Ct. at 2401; *Feeney*, 495 U.S. at 305, 110 S.Ct. at 1872; *Dellmuth*, 491 U.S. at 227–28, 109 S.Ct. at 2399–2400. As the Court stated in *Dellmuth:*

To temper Congress' acknowledged power of abrogation with due concern for the Eleventh Amendment's role as an essential component of our constitutional structure, we have applied a simple but stringent test: "Congress may abrogate the State's constitutionally secured im-

---

**4.** The Eleventh Amendment does not apply to suits brought in state court, which are instead controlled by common law principles of sovereign immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63–64, 109 S.Ct. 2304, 2307–2308, 105 L.Ed.2d 45 (1989); *Maine v. Thiboutot*, 448 U.S. 1, 9 n. 7, 100 S.Ct. 2502, 2507 n. 7, 65 L.Ed.2d 555 (1980).

**5.** Although generally the Eleventh Amendment prohibits even federal question cases against states in federal courts, *see Will*, 491 U.S. at 67 n. 6, 109 S.Ct. at 2309 n. 6; *Welch*, 483 U.S. at 482, 107 S.Ct. at 2950, Congress may abrogate the Eleventh Amendment in certain circum-

stances. Specifically, Congress retains the power to override state sovereign and Eleventh Amendment immunity in cases involving (1) rights protected by the Fourteenth Amendment and (2) the regulation of interstate commerce. *See, e.g., Gregory v. Ashcroft*, — U.S. —, — – —, 111 S.Ct. 2395, 2405–06, 115 L.Ed.2d 410 (1991); *Welch*, 483 U.S. at 478, 107 S.Ct. at 2948; *Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907; *Quern v. Jordan*, 440 U.S. 332, 344, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 484–85, 96 S.Ct. 2666, 2750–51, 49 L.Ed.2d 614 (1976).

munity from suit in federal court only by making its intention *unmistakably clear in the language of the statute."* ... Evidence of congressional intent must be both *unequivocal and textual.*[6]

491 U.S. at 227–28, 109 S.Ct. at 2400 (quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171, *reh'g denied,* 473 U.S. 926, 106 S.Ct. 18, 87 L.Ed.2d 696 (1985)) (emphasis added); *Welch,* 483 U.S. at 474, 107 S.Ct. at 2946; *Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 16, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981); *see also Gregory,* — U.S. —, 111 S.Ct. at 2406 ("in the face of ambiguity, we will not attribute to Congress an intent to intrude on State government[ ] ... regardless of whether Congress acted pursuant to its commerce clause power or § 5 of the Fourteenth Amendment"); *EEOC v. Wyoming,* 460 U.S. 226, 244 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983) ("rule of statutory construction to be applied where statutory intent is ambiguous [is that] Congress must state its intent to impose mandatory obligations on the states"); *Quern,* 440 U.S. at 342–44, 99 S.Ct. at 1145–47 ("it is not easy to infer that Congress in legislating pursuant to the Commerce Clause ... desired silently to deprive the States of an immunity they have long enjoyed").

■ The Court has similarly employed a stringent standard to determine whether a state has waived Eleventh Amendment immunity. As stated in *Feeney:* "The Court will give effect to a State's waiver of Eleventh Amendment immunity 'only where stated by the *most express language* or by such *overwhelming implication* from the text as [will] leave no room for any other reasonable construction.'" 495 U.S. at

305, 110 S.Ct. at 1873 (quoting *Atascadero,* 473 U.S. at 239–40, 105 S.Ct. at 3146) (emphasis added); *see also Welch,* 483 U.S. at 473, 107 S.Ct. at 2945; *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662, *reh'g denied,* 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974). A state does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts.[7] *Feeney,* 495 U.S. at 306, 110 S.Ct. at 1873; *Florida Dep't of Health,* 450 U.S. at 150, 101 S.Ct. at 1034. For a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, "it must specify the State's intention to subject itself to suit in *federal* court." *Feeney,* 495 U.S. at 306, 110 S.Ct. at 1873 (quoting *Atascadero,* 473 U.S. at 241, 105 S.Ct. at 3146) (emphasis in original).

The Court has offered numerous rationale for these strict standards of interpretation. First, "abrogation of sovereign immunity upsets the 'fundamental constitutional balance between the Federal Government and the States.'" *Feeney,* 495 U.S. at 305, 110 S.Ct. at 1872; *Dellmuth,* 491 U.S. at 227, 109 S.Ct. at 2399; *Atascadero,* 473 U.S. at 238, 105 S.Ct. at 3145; *Pennhurst,* 465 U.S. at 100, 104 S.Ct. at 907; *Hutto v. Finney,* 437 U.S. 678, 691, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978), *reh'g denied,* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979). The Court explained in *Pennhurst:*

Our reluctance to infer that a State's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system. A state's constitutional interest in immunity encompasses not merely *whether* it can be sued, but *where* it may be sued.

---

6. As a result, the Court has held that a mere permissible inference of intent is not enough to justify a finding of abrogation. *Dellmuth,* 491 U.S. at 230, 109 S.Ct. at 2401. Similarly, a federal statute's general authorization for suit in federal court is "not the kind of unequivocal language sufficient to abrogate the Eleventh Amendment." *Welch,* 483 U.S. at 476, 107 S.Ct. at 2947; *accord Dellmuth,* 491 U.S. at 231, 109 S.Ct. at 2401; *Atascadero,* 473 U.S. at 246, 105 S.Ct. at 3149.

7. In other words, "a State's waiver of sovereign immunity in its own courts is not a waiver of Eleventh Amendment Immunity in the federal courts." *Pennhurst,* 465 U.S. at 99 n. 9, 104 S.Ct. at 908 n. 9; *see also Welch,* 483 U.S. at 473–74, 107 S.Ct. at 2945–46; *Florida Dep't of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132, *reh'g denied,* 451 U.S. 933, 101 S.Ct. 2008, 68 L.Ed.2d 319 (1981); *Great Northern Life Ins. Co. v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 876, 88 L.Ed. 1121 (1944).

As Justice Marshall well has noted "because of the problems of federalism inherent in making one sovereign appear against its will in the courts of the other, a restriction upon the exercise of federal judicial power has long been considered appropriate...."

465 U.S. at 99–100, 104 S.Ct. at 907 (quoting *Employees,* 411 U.S. at 294, 93 S.Ct. at 1622 (Marshall, J., concurring in result)) (emphasis in original). The Court has also recognized that a strict standard is required "because States are unable directly to remedy a judicial misinterpretation of ... abrogation [or waiver]." *Feeney,* 495 U.S. at 306, 110 S.Ct. at 1873.

### C. *The Port Authority and Eleventh Amendment Immunity*

In a long line of cases, both Federal courts and the courts of New York and New Jersey have treated the Port Authority as a direct governmental agency of New York and New Jersey, vested with absolute immunity to suit. *See Trippe v. Port of New York Authority,* 14 N.Y.2d 119, 123, 249 N.Y.S.2d 409, 198 N.E.2d 585 (1964); *Luciano v. Fanberg Realty Co.,* 102 A.D.2d 94, 95–96, 475 N.Y.S.2d 854 (1st Dep't 1984) (citing cases); *Port of New York Authority v. Weehawken,* 27 N.J.Super 328, 333, 99 A.2d 377 (App.Div.1953) (citing more cases), *rev'd on other grounds,* 14 N.J. 570, 103 A.2d 603 (1954). On two occasions, the Third Circuit has held that the Port Authority is entitled to Eleventh Amendment immunity.[8] *See Leadbeater v. Port Authority Trans–Hudson Corporation,* 873 F.2d 45, 47 (3d Cir. 1989), *vacated on other grounds sub nom., Benitez v. Port Authority Trans–Hudson Corp.,* 495 U.S. 926, 110 S.Ct. 2163, 109 L.Ed.2d 493 (1990); *Port Authority Police Benev. Ass'n v. Port Authority of New*

*York and New Jersey,* 819 F.2d 413, 414–18 (3d Cir.), *cert. denied,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). *Cf. Mineo v. Port Authority of New York and New Jersey,* 779 F.2d 939, 949 (3d Cir.1985) (holding that Port Authority should be treated as state for Tenth Amendment Purposes), *cert. denied,* 478 U.S. 1005, 106 S.Ct. 3297, 92 L.Ed.2d 712 (1986).

■ The Supreme Court has assumed, without deciding, that the Port Authority is entitled to Eleventh Amendment immunity in order to address the question of whether such immunity was waived.[9] *Feeney,* 495 U.S. at 304–05, 110 S.Ct. at 1872–73. Consistent with this authority and given Hess' failure to contest the issue, a finding that both the Port Authority and PATH are vested with Eleventh Amendment immunity is appropriate.

In almost identical statutes, however, both New York and New Jersey have expressly consented to suit against the Port Authority. *Feeney,* 495 U.S. at 306, 110 S.Ct. at 1873; *see* N.J.S.A. § 32:1–157; N.Y.Unconsol.Laws § 7101. The relevant provision (the "Consent Provision") reads as follows:

> ... [T]he states of New York and New Jersey consent to suits, actions or proceedings of any form or nature at law, in equity or otherwise (including proceedings to enforce arbitration agreements) against the Port Authority ... and to appeals therefrom and reviews thereof....

N.J.S.A. § 32:1–157; N.Y.Unconsol.Laws § 7101.

In *Feeney,* the Supreme Court examined the Consent to Suit Statutes. 495 U.S. at 306–09, 110 S.Ct. at 1873–74. Although the Court recognized that the Consent Provi-

---

8. The legislatures of both New York and New Jersey have expressly provided that PATH "shall have all of the privileges [and] immunities ... of the Port Authority." N.J.S.A. § 32:1–35.61; N.Y.Unconsol.Laws § 6612. By virtue of these statutes, the Port Authority contends PATH enjoys Eleventh Amendment immunity to the same extent as the Port Authority. Moving Brief at 4. Hess does not contend otherwise; this contention is accepted. *See Leadbeater,* 873 F.2d at 47 (employing same approach).

9. Although the Supreme Court has not addressed this issue with regard to Port Authority, it has indicated that interstate agencies can qualify for Eleventh Amendment immunity. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979).

sion did not unambiguously consent to jurisdiction in Federal court, the court found consent in the statutory venue provision (the "Venue Provision") contained in a later section of the Consent to Suit Statutes. The Court recognized that the Venue Provision was "suffic[ient] to resolve any ambiguity contained in the States' general consent to suit provision by expressly indicating that the States' consent to suit in [F]ederal court." *Id.* at 306-07, 110 S.Ct. at 1873. The Venue Provision states:

> The foregoing consent is granted upon the condition that venue in any suit, action or proceeding against the [P]ort [A]uthority shall be laid within a county or a judicial district, established by one of the said states *or by the United States,* and situated wholly or partially within the port of New York district.

N.J.S.A. § 32:1–162 (emphasis added); N.Y.Unconsol.Laws § 7106 (same).

Significantly, although the Venue Provision was contained in a different statutory section than the Consent Provision, reference to the Venue Provision was expressly found to be appropriate. The Court stated:

> Although one might not look first to a venue provision to find evidence of waiver of sovereign immunity, we believe that the [Venue P]rovision directly implicates the extent of the States' waiver embodied in the [C]onsent [P]rovision. The States' passed the [V]enue and [C]onsent to suit [P]rovisions as portions of the same Acts that set forth the nature, timing, and extent of the States' consent to suit. The [V]enue [P]rovision expressly refers to and qualifies the more general [C]onsent to suit [P]rovision.

*Feeney,* 495 U.S. at 307, 110 S.Ct. at 1874.

In addition to the Venue provision, New York and New Jersey have provided that consent to suit against the Port Authority is subject to a number of other conditions. For present purposes, the most significant condition is contained in the statutory provision which contains the limitations period for actions against the Port Authority. This provision (the "Limitations Provision") immediately follows the Venue Provision and states:

> The foregoing consent is granted upon the condition that any suit, action or proceeding prosecuted or maintained under this act shall be commenced within *one year* after the cause of action therefor shall have accrued....

N.J.S.A. § 32:1–163 (emphasis added); N.Y.Unconsol.Laws § 7107 (same).

Courts applying the Consent to Suit Statutes have indicated that the one-year limitations period is to be strictly·construed. *See Larson v. Port of New York Authority,* 17 F.R.D. 298, 299-300 (S.D.N.Y.1955); *Rao v. Port of New York Authority,* 122 F.Supp. 595, 597 (E.D.N.Y.1954), *aff'd,* 222 F.2d 363 (2d Cir.1955); *De Luca v. New York City Transit Authority,* 119 Misc.2d 523, 464 N.Y.S.2d 340, 341 (Sup.Ct.N.Y.County 1983); *Matthews v. Port of New York Authority,* 163 N.J.Super. 83, 85, 394 *A.*2d 172 (Law.Div.1978), *aff'd* 171 N.J.Super 38, 407 A.2d 1255 (App. Div.1979); *see also Luciano,* 102 A.D.2d at 96, 475 N.Y.S.2d 854 ("waiver of immunity statutes must be strictly construed") (citing *Schillinger v. United States,* 155 U.S. 163, 166, 15 S.Ct. 85, 85, 39 L.Ed. 108 (1894)); *Wood v. Dic/Underhill & Universal Builders Supply Co.,* 136 N.J.Super. 249, 252, 345 A.2d 382 (Law.Div.1975) (same), *aff'd,* 144 N.J.Super. 364, 365 A.2d 723 (App.Div.1976), *cert. denied,* 73 N.J. 65, 372 A.2d 330 (1977).

In fact, as these courts have explained, the Limitations Provision "is more than a statute of limitations in the usual sense." *De Luca,* 464 N.Y.S.2d at 341; *accord Balzano v. Port of New York Authority,* 232 N.Y.S.2d 776, 778 (Sup.Ct.Kings County 1962), *aff'd,* 23 A.D.2d 573, 256 N.Y.S.2d 495 (2d Dep't 1965). Rather, it is "an integral part of the right to enforce [an] action" against the Port Authority, *Balzano,* 232 N.Y.S.2d at 778, and it is "a condition precedent to bringing the action which must be pleaded." *De Luca,* 464 N.Y.S.2d at 341; *Matthews,* 163 N.J.Super at 85, 394 A.2d 172; *Wood,* 136 N.J.Super at 252, 345 A.2d 382.

Because "[t]he liability and the remedy are created by and within the same statute, the limitations of the remedy [are] treated as limitations of the right." *Balzano*, 232 N.Y.S.2d at 778. For this reason, the one year limitations period is "not subject to the disabilities or excuses by which ordinary statutes of limitation may be avoided by a plaintiff." *Larson*, 17 F.R.D. at 300; *accord Balzano*, 232 N.Y.S.2d at 778 (citing numerous cases). Moreover, failure to comply with the one year limitations period results in a jurisdictional defect requiring dismissal. *De Luca*, 464 N.Y.S.2d at 341; *Matthews*, 163 N.J.Super. at 85, 394 A.2d 172; *Pinckney v. Jersey City*, 140 N.J.Super. 96, 100–103, 355 A.2d 214 (App.Div. 1976); *see also Welch*, 483 U.S. at 476 n. 6, 107 S.Ct. at 2947 n. 6 ("Eleventh Amendment immunity 'partakes of the nature of a jurisdictional bar' ") (quoting *Edelman*, 415 U.S. at 678, 94 S.Ct. at 1363).

### D. *Merits of Motion to Dismiss*

■ The Port Authority argues that this action must be dismissed because Hess has failed bring suit within one year of the date on which his action accrued. Moving Brief at 8; Reply Brief at 5. This being the case, it is argued Hess has failed to satisfy a condition precedent to bringing suit against the Port Authority; whatever waiver may be present in the Consent to Suit Statutes has, according to the Port Authority, been negated. Moving Brief at 7–8; Reply Brief at 3. This argument is persuasive.

■ As previously indicated, the relinquishment of Eleventh Amendment rights cannot be lightly inferred and, indeed, will not be inferred unless a court finds waiver "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1361; *see also supra* at pp. 1177–78. As a state is under no obligation to waive its Eleventh Amendment immunity, it is axiomatic that a state may agree to waive its immunity only subject to certain

conditions. *See Feeney*, 495 U.S. at 307, 110 S.Ct. at 1874; *Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907; *Luciano*, 102 A.D.2d at 96, 475 N.Y.S.2d 854; *see also Allendale Leasing, Inc. v. Stone*, 614 F.Supp. 1440, 1451 (D.R.I.1985) (dismissing plaintiff's claims for falling outside scope of consent to suit statute), *aff'd*, 788 F.2d 830 (1st Cir.1986).

As one court has stated, the "presumption that immunity has not been waived surely applies to the *scope* of a State's consent to be sued as well as to the existence of consent in the first place." *Allendale*, 614 F.Supp. at 1451 (emphasis added). Moreover, as the court in *Luciano* stated: "[Because the] Port Authority, in the absence of consent, was absolutely immune from suit, the States were free to condition consent on compliance with whatever requirements they deemed appropriate." 102 A.D.2d at 96, 475 N.Y.S.2d 854 (citing *Trippe*, 14 N.Y.2d at 123, 249 N.Y.S.2d 409, 198 N.E.2d 585).

In this case, the Consent to Suit Statutes offer a broad but expressly conditional waiver of the Port Authority's Eleventh Amendment immunity. *See Rao*, 122 F.Supp. at 597 (conditions to suit against Authority are clear and unambiguous). Pursuant to the Venue Provision, "consent is granted *upon the condition* " that suit against the Port Authority be maintained in the state courts of New York and New Jersey or in the Federal courts within the port district of New York. N.J.S.A. § 32:1–162 (emphasis added); N.Y.Unconsol.Law § 7106 (same). Similarly, pursuant to the Limitations Provision, "consent is granted *upon the condition* " that suit must be brought within one year of accrual of the cause of action.[10] N.J.S.A. § 32:1–163 (emphasis added); N.Y.Unconsol.Law § 7107 (same).

By its holding in *Feeney*, the Supreme Court recognized the validity of the Port Authority's conditions to consent, as well as the integrated nature of the Consent to

---

10. Other statutory conditions to suit exist. *See, e.g.*, N.J.S.A. § 32:1–160 and N.Y.Unconsol.Law § 7104 ("consent does not extend to civil suits ... for the recovery of statutory penalties"); N.J.S.A. § 32:1–161 and N.Y.Unconsol.Law § 7105 ("consent does not extend to suits ... for judgments, orders or decrees restraining [or] enjoining ... the Port Authority").

Suit Statutes. The Court, in giving effect to the Venue Provision, stated:

> We believe that the [Venue P]rovision directly indicates the *extent* of the States' waiver embodied in the [C]onsent [P]rovision. The States passed the [V]enue and [C]onsent to suit [P]rovisions as portions of the same Acts that set forth the nature, *timing,* and extent of the States' consent to suit.

*Feeney,* 495 U.S. at 307, 110 S.Ct. at 1874 (emphasis added). Implicit in the *Feeney* Court's statement is the recognition that no reason exists to distinguish between the Venue Provision and the Limitations Provision. The two provisions are contained in consecutive statutory sections; both contain the same conditional language; and both "refer[ ] to and qualif[y] the more general language" and scope of the Consent Provision. *Id.*

To apply the Venue Provision but not the Limitations Provision—as Hess suggests—would create an illogical and unfair result. On the one hand, Hess would benefit from the Venue Provision by being allowed to bring suit against the Port Authority in Federal Court. On the other hand, Hess would avoid the negative effect of the Limitations Provisions if his argument is accepted that the condition does not apply. Put simply, Hess cannot be allowed to pick and choose which conditions to suit against the Port Authority should apply, subject only to the criteria of whether the condition at issue is favorable to his case. It is an all or nothing proposition and, pursuant to *Feeney,* it appears that *all* conditions apply.

Case law construing the Consent to Suit Statutes further supports this position. As discussed above, the Consent to Suit Statutes in general, and the one-year limitations period in particular, have been strictly construed. *See Larson,* 17 F.R.D. at 299–300; *Rao,* 122 F.Supp. at 597; *De Luca,* 464 N.Y.S.2d at 341; *Matthews,* 163 N.J.Super. at 85, 394 A.2d 172; *see also Luciano,* 102 A.D.2d at 96, 475 N.Y.S.2d

854 (waiver of immunity statutes must be strictly construed") (citing *Schillinger,* 155 U.S. at 166, 15 S.Ct. at 85); *Wood,* 136 N.J.Super. at 252, 345 A.2d 382. As well, these courts have recognized that the Limitations Provision "is more than a statute of limitations in the usual sense." *De Luca,* 464 N.Y.S.2d at 341; *see also Balzano,* 232 N.Y.S.2d at 778. It is both "an integral part of the right to enforce [an] action" against the Port Authority, *Balzano,* 232 N.Y.S.2d at 778, and "a condition precedent to bringing the action" in the first place. *De Luca,* 464 N.Y.S.2d at 341; *Matthews,* 163 N.J.Super at 85, 394 A.2d 172; *Wood,* 136 N.J.Super at 252, 345 A.2d 382.

Although Hess presents numerous arguments to avoid application of the Limitations Provision and dismissal of this action, these arguments are without merit.

1. **Argument That The Port Authority Has Waived Its Eleventh Amendment Immunity In Its Entirety**

Hess argues that, pursuant to the Consent to Suit Statutes, the Port Authority has waived its Eleventh Amendment Immunity entirely. Opp. Brief at 6. According to Hess, this total waiver is necessitated by the holding in *Feeney.* Opp. Brief at 5–6. Hess concludes that "[t]he argued 'conditional waiver' of Eleventh Amendment immunity has no basis in law or in fact." *Id.* at 3.

Hess misconstrues both the holding in *Feeney* and the law generally with regard to waiver of Eleventh Amendment immunity. While *Feeney* did hold that, pursuant to the Venue Provision, the Port Authority had waived its right not to be sued in Federal Court, there was no suggestion in *Feeney* that the conditions accompanying that waiver were invalid. For instance, while *Feeney* indicated that the Port Authority can be sued in Federal court, it neither stated nor implied that the Port Authority can be sued in *any* Federal Court.[11]

---

11. Significantly, *Feeney* was brought in a Federal judicial district which was proper under the Venue Provision. Under such circumstances, a

finding of waiver was appropriate. Nevertheless, it does not follow that, if an action was instituted against the Port Authority in a Feder-

In fact, by giving positive effect to the express language of the Venue Provision, the Court, in effect, endorsed its conditions as well. This endorsement is implicit in the rationale of *Feeney*. As the discussion above indicates, *see supra* at p. 1179, the *Feeney* Court expressly indicated that the Venue Provision was important because it "qualified the more general language" and scope of the Consent Provision. The Court also recognized that the Venue Provision was a proper place to turn for guidance because the Venue and Consent Provisions were both "portions of the same Acts that set forth the nature, *timing,* and extent of the States' consent to suit" against the Port Authority. *Feeney,* 495 U.S. at 307, 110 S.Ct. at 1874 (emphasis added).

In addition, even if it is conceded that *Feeney* was ambiguous with regard to the conditions expressed in the Consent to Suit Statutes, well-established case law in this area counsels against the broad reading of *Feeney* suggested by Hess.[12] As previously discussed, a stringent standard exists for finding waiver of Eleventh Amendment Immunity. In conjunction with this stringent standard, states may condition their consent. *See, e.g., Allendale,* 614 F.Supp. at 1451. As well, consent to suit statutes must be strictly construed. *Feeney,* 495 U.S. at 305–06, 110 S.Ct. at 1872–73; *Schillinger,* 155 U.S. at 166, 15 S.Ct. at 85; *Luciano,* 102 A.D.2d at 96, 475 N.Y.S.2d 854; *Wood,* 136 N.J.Super. at 252, 345 A.2d 382. In particular, courts have strictly construed the one year limitations period of the Consent To Suit Statutes. *See Larson,* 17 F.R.D. at 299–300; *Rao,* 122 F.Supp. at 597; *De Luca,* 464 N.Y.S.2d at 341; *Matthews,* 163 N.J.Super. at 85, 394 A.2d 172.

■ For these reasons, the broad interpretation of *Feeney* suggested by Hess is rejected. In accordance with *Feeney* and the case law in this area, the Port Authority waived its Eleventh Amendment immunity subject, *inter alia,* to the conditions

set forth in the Venue Provision and the Limitations Provision.

2. Argument That Consent To Suit Statutes Are Not Needed To Obtain Subject Matter Jurisdiction Over The Port Authority In This Case

■ Hess argues that, because he is "an employee covered by FELA," he "does not need the consent of [the Port Authority] to sue." Opp. Brief at 3–4. Hess also relies on *Hilton,* —— U.S. ——, 112 S.Ct. 560, for the proposition that he "does not need any consent by [the Port Authority] to bring suit under the FELA." *Id.* According to Hess, the Supreme Court in *Hilton* "held that any sovereign immunity which may be held by state owned railroads under a state's common law has been abrogated by the enactment by Congress of FELA. The Court held that the entire federal scheme of railroad law applies to state owned railroads." *Id.* These arguments are without merit.

As discussed, a state or state agency can lose its Eleventh Amendment immunity in only two ways—either through Congressional abrogation or through a consent to suit statute. *See supra* at p. 1176. Hess' argument ignores the fact the Supreme Court has already held that FELA does not, by itself, contain the necessary explicit language to constitute an abrogation of Eleventh Amendment immunity. *See Feeney,* 495 U.S. at 305, 110 S.Ct. at 1872; *Welch,* 483 U.S. at 476–78, 107 S.Ct. at 2947–48. In *Welch,* the Court expressly reversed that portion of *Parden v. Terminal Ry. of Alabama State Docks Dep't,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233, *reh'g denied,* 377 U.S. 1010, 84 S.Ct. 1903, 12 L.Ed.2d 1057 (1964), which held that "Congress evidenced an intention to abrogate Eleventh Amendment immunity by making FELA applicable to 'every common carrier by railroad while engaging in commerce between any of the several

---

al judicial district not covered by the Venue Provision, the Court in *Feeney* would have found a waiver under those circumstances as well.

**12.** The Court in *Feeney* recognized the constraining effect of this case law. *See* 495 U.S. at 304–07, 110 S.Ct. at 1872–74.

states....' "[13] *Welch,* 483 U.S. at 476, 107 S.Ct. at 2947 (quoting FELA, 45 U.S.C. § 51). The *Welch* Court further stated:

Although our later decisions do not expressly overrule *Parden,* they leave no doubt that *Parden's* discussion of Congressional intent [in FELA] to negate the Eleventh Amendment is no longer good law.... Accordingly, to the extent that *Parden v. Terminal Railway, supra,* is inconsistent with the requirement that an abrogation of Eleventh Amendment immunity by Congress must be expressed in unmistakably clear language, it is overruled.

*Id.* at 478, 107 S.Ct. at 2948; *see also Hilton,* —— U.S. at ——, 112 S.Ct. at 562–63 (re-affirming *Welch* ).

Review of the relevant portions of FELA does not evidence a Congressional intent to abrogate that is "both unequivocal and textual" and "unmistakably clear in the language of the statute." *Dellmuth,* 491 U.S. at 227–28, 109 S.Ct. at 2399–2400 (quoting *Atascadero,* 473 U.S. at 242, 105 S.Ct. at 3147); *Welch,* 483 U.S. at 475, 107 S.Ct. at 2946; *Pennhurst,* 451 U.S. at 16, 101 S.Ct. at 1539. The relevant portions of FELA read:

Every common carrier by railroad while engaging in commerce between any of the several States or Territories ... shall be liable in damages to any person suffering from injury while he is employed by such carrier in such commerce ... for any such injury or death resulting ... from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.

45 U.S.C. § 51.

[A]n action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.

*Id.,* § 56.

Nothing in FELA indicates an unambiguous textual intent by Congress to abrogate Eleventh Amendment immunity. The Court has repeatedly recognized that general language authorizing suit in Federal court does not satisfy the stringent standard required to show abrogation. *See, e.g., Dellmuth,* 491 U.S. at 231, 109 S.Ct. at 2401; *Welch,* 483 U.S. at 476, 107 S.Ct. at 2947; *Atascadero,* 473 U.S. at 246, 105 S.Ct. at 3149; *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907. The Court stated in *Atascadero:*

A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate Eleventh Amendment. When Congress chooses to subject the states to federal jurisdiction, it must do so specifically.

473 U.S. at 246, 105 S.Ct. at 3149.

Hess' reliance on *Hilton* is similarly unavailing. In *Hilton,* the Court held that the language of FELA unambiguously indicated an intent by Congress to subject state owned railroads to the statute's provisions. —— U.S. at ——, 112 S.Ct. at 563–66. Therefore, the Court concluded that states and their agencies could be sued in state court for violations of FELA. *Id.* at ——, 112 S.Ct. at 566.

As the Court recognized, however, *Hilton* did not disturb the Court's Eleventh Amendment jurisprudence. The Court in *Hilton* left *Welch* intact and specifically limited its holding to suits against states maintained in *state* courts. The Court stated:

---

**13.** In *Parden,* the Court was faced with an action for damages pursuant to FELA. 377 U.S. at 184–86, 84 S.Ct. at 1207–10. In *Welch,* although the court was concerned with a different statute—the Jones Act, 46 U.S.C. § 688(a)—the Court found *Parden* to be relevant because "the

Jones Act applied the remedial provisions of FELA to seamen." 483 U.S. at 471, 107 S.Ct. at 2945; *see also Hilton,* —— U.S. at ——, 112 S.Ct. at 562 (confirming relation between both statutes).

*Welch* is not controlling here.... [T]he most vital consideration of our decision today, which is that to confer immunity from *state-court* suit would strip all FELA and Jones Act protection from workers employed by the States, was not at all discussed in the *Welch* decision....... [A]s we have stated on many occasions, the Eleventh Amendment does not apply in state courts.

*Id.* at ——, 112 S.Ct. at 564–65 (citing *Will*, 491 U.S. at 63, 109 S.Ct. at 2307; *Thiboutot*, 448 U.S. at 9 n. 7, 100 S.Ct. at 2507 n. 7; *Nevada v. Hall*, 440 U.S. 410, 420–21, 99 S.Ct. 1182, 1188–89, 59 L.Ed.2d 416, *reh'g denied*, 441 U.S. 917, 99 S.Ct. 2018, 60 L.Ed.2d 389 (1979)) (emphasis added).

The *Hilton* Court further recognized that "two separate inquiries into state liability"—Eleventh Amendment doctrine and statutory interpretation—must be made by courts. *Id.* —— U.S. at ——, 112 S.Ct. at 566. Although in some cases this two-fold inquiry may create a situation in which a Federal statute can only be enforced in state court, the Court recognized that "[s]ymmetry is not an imperative that must override just expectations which themselves rest upon the predictability and order of *stare decisis.*" *Id.* This asymmetry, in fact, is based on the established precedent that a state may waive its sovereign immunity and consent to suit in state court while, nevertheless, maintaining its Eleventh Amendment Immunity.[14] *Feeney*, 495 U.S. at 306, 110 S.Ct. at 1873; *Florida Dep't of Health*, 450 U.S. at 150, 101 S.Ct. at 1034.

For these reasons, neither FELA nor *Hilton* provide relief for Hess. FELA does not abrogate Eleventh Amendment immunity, nor does *Hilton* address Eleventh Amendment immunity. Because the possibility of Congressional abrogation is closed to Hess, he has no choice except to rely on the Consent to Suit Statutes for this action. Therefore, his argument that the Consent to Suit Statutes need not be employed to maintain suit against the Port Authority is rejected.

3. Argument That The One Year Limitations Period In The Consent To Suit Statutes Cannot Be Used To Alter FELA's Three Year Limitations Period

■ The final argument offered by Hess is that the one year limitations period cannot be applied in this case. Opp. Brief at 7–8. Once again, Hess argues *Hilton* controls because it held "that the entire Federal scheme of railroad law as embodied in FELA governs the remedy of injured railroaders, not state statute or common law." *Id.* at 7. The inapplicability of *Hilton* to the issues in this case has been addressed immediately above, *see supra* at pp. 1183–84 and need not repeated. Put simply, *Hilton* authorizes the enforcement of FELA against states and their agencies in state, not Federal, courts.

Hess also argues:

[I]f the limitation o[f] one year has any relevance to an FELA action, the explicit terms of the FELA render the limitations void. The FELA provides that no employer may promulgate or enforce any rule or procedure which reduces or limits an employee's rights under the FELA. 45 U.S.C. § 55. The one year limitations period is argued to reduce Hess' rights under the FELA and is therefore void.

Opp. Brief at 7. These arguments are also without merit.

Contrary to Hess' characterization, this is not a case in which state and Federal statutes of limitations are found to be in conflict. In such a case, there is no question that the Federal limitations period

---

**14.** At oral argument, counsel for Hess stated that counsel for the Port Authority appeared to be confusing state Eleventh Amendment immunity and state sovereign immunity. Oral Arg. Tr. at 6. In fact, it appears counsel for Hess has confused the two immunities. For instance, the Opposition Brief states: "As [Port Authority] enjoys no *sovereign* immunity, even in the absence of a Consent to Su[it] Provision in its legislation, the limitations or conditions contained in the Consent to Su[it] have no bearing on this action." Opp. Brief at 3 (emphasis added). This argument fails to appreciate that (1) waiver of a state's sovereign immunity does not affect a state's ability to be sued in Federal court and (2) the Consent to Suit Statutes are the only means available to Hess to achieve subject matter jurisdiction over the Port Authority.

would prevail under the principles of Federal preemption as provided by the Supremacy Clause of the United States Constitution. *See* U.S. Const. Art. VI, cl. 2. Instead, the one year limitations period applicable in this case "is more than a statute of limitations in the usual sense." *De Luca*, 464 N.Y.S.2d at 341; *see also Balzano*, 232 N.Y.S.2d at 778. It is "an integral part of the right to enforce [an] action" against the Port Authority, *Balzano*, 232 N.Y.S.2d at 778, and "a condition precedent to bringing the action which must be pleaded." *De Luca*, 464 N.Y.S.2d at 341; *Matthews*, 163 N.J.Super at 85, 394 A.2d 172; *Wood*, 136 N.J.Super at 252, 345 A.2d 382.

Because "[t]he liability and the remedy are created by and within the same statute, the limitations of the remedy [are] treated as limitations of the right." *Balzano*, 232 N.Y.S.2d at 778. For this reason, the one year limitations period is "not subject to the disabilities or excuses by which ordinary statutes of limitation may be avoided by a plaintiff." *Larson*, 17 F.R.D. at 300; *accord Balzano*, 232 N.Y.S.2d at 778 (citing numerous cases).

The distinction here is between a statute promulgated by a State legislature and "a rule of [C]onstitutional law, based on the Eleventh Amendment."[15] *Hilton*, — U.S. at —, 112 S.Ct. at 565. While certainly the former would be preempted by a Federal statute, the latter cannot necessarily be so preempted. As the Court has recognized, a "state is not divested of its immunity 'on the mere ground that the case is one arising under the Constitution or laws of the United States.'" *Parden*, 377 U.S. at 186, 84 S.Ct. at 1209 (quoting *Hans*, 134 U.S. at 10, 10 S.Ct. at 505).

As previously discussed, only a state's consent or Congressional abrogation can deprive a state of its Eleventh Amendment immunity. As also discussed, FELA does not meet the stringent standard established by the Supreme Court and does not abrogate state Eleventh Amendment immunity.[16] *See supra* at pp. 1182–83. For these reasons, Hess can only sue the Port Authority in Federal court under the conditions to consent provided by the Consent to Suit Statutes. As a condition to suit, the Statutes required Hess to bring suit within one year. Because he failed to comply with this condition, the Complaint must be dismissed.

Conclusion

For the reasons stated above, the Port Authority motion to dismiss is granted.

---

15. Hess' argument that Section 55 of FELA prohibits application of the one year limitations period lacks merit. A rule of Constitutional law derived from the Eleventh Amendment is simply not "a rule or procedure" promulgated by an employer to reduce or limit an employee's right under FELA.

16. The Port Authority concedes that, if this action was brought in a New York or New Jersey state court, *Hilton* would require the three year statute of limitations to be applied. Oral Arg. Tr. at 3. This is logical because *Hilton* found state sovereign immunity—and, therefore, the conditions set forth in the Consent to Suit Stat-

utes as they apply to state courts—to be abrogated by FELA.

Hess argues that this distinction creates an "absurd" situation. *Id.* at 5–6. In a FELA suit against the Port Authority, there would be a one year limitations period if it was brought in Federal court and a three year limitations period if it was brought in New York or New Jersey state court. *Id.* While this may be the case, the Court in *Hilton* recognized that Eleventh Amendment immunity and *stare decisis* take precedence over symmetry in the law. — U.S. at —, 112 S.Ct. at 566.